EASTERBROOK, Circuit Judge.
A removable alien who has lived in the United States for seven years (including five as a permanent resident) is entitled to seek cancellation of removal unless he has committed an “aggravated felony.” 8 U.S.C. § 1229b(a)(3). Alberto Velasco-Giron, a citizen of Mexico who was admitted to the United States for permanent residence, became removable after multiple criminal convictions. An immigration judge, seconded by the Board of Immigration Appeals, concluded that one of these convictions is for “sexual abuse .of a minor”, which 8 U.S.C. § 1101(a)(43)(A) classifies as an aggravated felony, and that Velasco-Giron therefore is ineligible even to be considered for cancellation of removal. In reaching that conclusion, the agency used as a guide the definition of “sexual abuse” in 18 U.S.C. § 3509(a)(8) rather than the one in 18 U.S.C. § 2243(a). See Matter of Rodriguez-Rodriguez, 22 I. & N. Dec. 991 (BIA 1999) (en banc); Matter of V-F-D, 23 I. & N. Dec. 859 (BIA 2006).
The conviction in question is for violating Cal.Penal Code § 261.5(c), which makes it a crime to engage in sexual intercourse with a person under the age of 18, if the defendant is at least three years older. The Board has held that this offense constitutes “sexual abuse of a minor”. Velasco-Giron was 18 at the time; the girl was 15; but the Board makes nothing of these ages, and it asks (so we too must ask) whether the crime is categorically “sexual abuse of a minor.” The Board’s affirmative answer stems from § 3509(a)(8), which defines “sexual abuse” as “the employment, use, persuasion, inducement, enticement, or coercion' of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children”. Elsewhere the Criminal Code defines a “minor” as a person under 18. See 18 U.S.C. §§ 2256(1), 2423(a).
The Board equates “child” with “minor”; Velasco-Giron does not argue otherwise. Instead he contends that the Board should use § 2243(a), which defines “sexual abuse of a minor” as engaging in a “sexual act” (a phrase that includes fondling as well as intercourse) with a person between the ages of 12 and 15, if the offender is at least four years older. The offense under Cal.Penal Code § 261.5(c) does not satisfy that definition categorically — and Velasco-Giron’s acts don’t satisfy it specifically (the age gap of 18 to 15 is three years).
*776 If the Immigration and Nationality Act supplied its own definition of “sexual abuse of a minor,” ours would be an easy case. But it does not. That’s why the Board had to choose, and the possibilities include § 3509(a)(8), § 2243(a), a few other sections in the Criminal Code, and a definition of the Board’s invention. Section 1101(a)(43)(A) specifies that the category “aggravated felony” includes “murder, rape, or sexual abuse of a minor”. The Board noted in Rodriguez-Rodriguez that Congress could have written something like “murder, rape, or sexual abuse of a minor (as defined in section 2243 of title 18)” but did not do so — though other sections do designate specific federal statutes. See, e.g., 8 U.S.C. § 1101(a)(43)(B): “illicit trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18)”. The Board stated that, because Congress chose to use a standard rather than a cross-reference, it would be inappropriate for the Board to adopt § 2243(a) as the sole definition; § 3509(a)(8) is more open-ended, which the Board saw as a better match given the legislative decision not to limit the definition by cross-reference.
A case such as Velasco-Giron’s shows one reason why. The offense under Cal.Penal Code § 261.5(c) is a member of a set that used to be called “statutory rape”; it fits comfortably next to “rape” in § 1101(a)(43)(A); but adopting § 2243(a) as an exclusive definition would make that impossible. What’s more, to adopt § 2243(a) as the only definition would be to eliminate the possibility that crimes against persons aged 11 and under, or 16 or 17, could be “sexual abuse of a minor.” (Recall that § 2243(a) deals only with victims aged 12 to 15.)
When resolving ambiguities in the Immigration and Nationality Act — and “sexual abuse of a minor” deserves the label “ambiguous” — the Board has the benefit of Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), under which the judiciary must respect an agency’s reasonable resolution. See, e.g., Scialabba v. Cuellar de Osorio, — U.S. -, 134 S.Ct. 2191, 2203, 189 L.Ed.2d 98 (2014); INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). We have considered the Board’s approach to “sexual abuse of a minor” five times, and each time we have held that Rodriguez-Rodriguez takes a reasonable approach to the issue. See Larar-Ruiz v. INS, 241 F.3d 934, 939-42 (7th Cir.2001); Guerrero-Perez v. INS, 242 F.3d 727, 735 n. 3 (7th Cir.2001) (also accepting the Board’s conclusion that a crime that a state classifies as a misdemeanor may be an “aggravated felony” for federal purposes); Espinoza-Franco v. Ashcroft, 394 F.3d 461 (7th Cir.2004); Gattem v. Gonzales, 412 F.3d 758, 762-66 (7th Cir.2005); Gaiskov v. Holder, 567 F.3d 832, 838 (7th Cir.2009).
Velasco-Giron maintains that sexual intercourse with a person under 18, by someone else at least three years older, is not “sexual abuse of a minor.” We could reach that conclusion, however, only if the Board exceeded its authority in Rodriguez-Rodriguez by looking to 18 U.S.C. § 3509(a)(8) as the starting point for understanding “sexual abuse” and to 18 U.S.C. §§ 2256(1), 2423(a) for the definition of a “minor” as a person under 18. Our -five decisions holding that the approach of Rodriguez-Rodñgupz is within the Board’s discretion foreclose Velasco-Giron’s arguments, unless we are prepared to overrule them all — which he asks us to do.
He relies principally on Estrada-Espinoza v. Mukasey, 546 F.3d 1147 (9th Cir. *777 2008) (en banc), which held that the Board erred in treating a violation of CaLPenal Code § 261.5(c) as “sexual abuse of a minor.” Estrada-Espinoza reached this conclusion because § 261.5(c) does not satisfy the definition in 18 U.S.C. § 2248(a), which requires a victim under the age of 16 and a four-year age difference. To justify adopting the definition in § 2243(a), the Ninth Circuit rejected the Board’s approach in Rodriguez-Rodriguez, holding, 546 F.3d at 1157 n. 7, that it flunks Step One of Chevron — that is to say, an agency lacks discretion if Congress has made the decision and left no ambiguity for the agency to resolve. That’s circular, however. If the court has already decided that the only proper definition comes from § 2243(a), then of course there’s no discretion for the Board to exercise. But the phrase “sexual abuse of a minor” that the Board must administer appears in 8 U.S.C. § 1101(a)(43)(A), not 18 U.S.C. § 2243(a), and § 1101(a)(43)(A) is open-ended. Precision is vital in a criminal statute; it is less important in a civil statute such as § 1101(a)(43)(A), and the Board was entitled to find that Congress omitted a statutory reference from § 1101(a)(43)(A) precisely in order to leave discretion for the agency.
The Ninth Circuit also concluded that Chevron is inapplicable to Rodriguez-Rodriguez because the Board adopted a standard rather than a rule. We’ll come back to this, but for now two points stand out. First, the Ninth Circuit did not identify any authority for its view that Chevron is limited to rules. It did cite Christensen v. Harris County, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), which holds that an opinion letter from an agency does not come within Chevron, but that’s a different point. Christensen is a precursor of United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), which concluded that only regulations and administrative adjudications come within Chevron. Rodriguez-Rodriguez is an administrative adjudication with precedential effect; it is part of Chevron’s domain. Second, the Ninth Circuit’s view that Rodriguez-Rodriguez did not adopt a “rule” misunderstands what the Board did. It decided to take the definition in § 3509(a)(8) as its guide. The agency could have issued a regulation pointing to § 3509(a)(8) or repeating its language verbatim, and it is hard to imagine that a court then would have said “not precise enough.” True, § 3509(a)(8) itself is open-ended; the Board needs to classify one state statute at a time, and the statutory language leaves room for debate about whether a particular state crime is in or out. Yet many statutes and regulations adopt criteria that leave lots of cases uncertain. If § 3509(a)(8) is good enough to be part of the United States Code, why would an agency be forbidden to adopt its approach?
At all events, it would not be possible for us to follow Estrada-Espinoza without overruling Lara-Ruiz and its four successors, for they hold that Rodriguez-Rodriguez is indeed entitled to respect under Chevron and is a permissible exercise of the Board’s discretion. Nor are we the only circuit to reach that conclusion. Oouch v. Department of Homeland Security, 633 F.3d 119, 122 (2d Cir.2011); Mugalli v. Ashcroft, 258 F.3d 52, 60 (2d Cir. 2001); and Restrepo v. Attorney General, 617 F.3d 787, 796 (3d Cir.2010), all hold that Rodriguez-Rodriguez is entitled to Chevron deference. Bahar v. Ashcroft, 264 F.3d 1309, 1312 (11th Cir.2001), also accepts Rodriguez-Rodriguez, though without explicit reliance on Chevron. Meanwhile the Fifth Circuit has held that, as a matter of federal law under the Sentencing Guidelines, a “minor” in the phrase “sexual abuse of a minor” is a person *778 under the age of 18. United States v. Rodriguez, 711 F.3d 541 (5th Cir.2013) (en banc). If that’s so, then it would be hard to see a problem in using the same age line to identify “sexual abuse of a minor” for immigration purposes.
Our dissenting colleague observes (see page 782) that most states treat persons 16 and older as adults for the purpose of defining sex offenses. Yet 18 U.S.C. § 2256(1) and § 2423(a) define 18 as adulthood. A federal court may set aside administrative decisions that are contrary to law, but nothing permits us to reject agency decisions that follow the United States Code, no matter how many states use a different age demarcation. Our colleague’s view that “[t]he question the Board should be addressing is the gravity of particular sexual offenses involving minors” (page 782) amounts to a conclusion that the Board’s approach in Rodriguez-Rodriguez is a substantively bad policy. As we have observed, however, Chevron permits the Board to establish its own doctrines when implementing ambiguous statutes.
The dissent also maintains that the Board has departed from its own precedent by supposing that Rodriguez-Rodriguez adopted § 3509(a)(8) as an exclusive test, rather than (as the Board put it in Rodriguez-Rodriguez) as a “guide.” Yet the Board’s decision in this case states that § 3509(a)(8) is being used “as a guide in identifying the types of crimes that we would consider to constitute sexual abuse of a minor” (emphasis added). If the Board in some other case had classified CaLPenal Code § 261.5(c) (or another materially similar law) as not constituting “sexual abuse of a minor,” then there would be a genuine concern about administrative inconsistency, but our dissenting colleague does not identify any such divergence.
Nor does Velasco-Giron, who (unlike the dissent) does not contend that the Board has been self-contradictory or that it erred by choosing 18 as the age of majority. Quite the contrary, Velasco-Giron writes that the Board’s disposition here “flowed ... from” Rodriguez-Rodriguez. He acknowledges that the Board has followed its own precedent, which it established years before (in a decision enforced by Afridi v. Gonzales, 442 F.3d 1212 (9th Cir.2006)), that a violation of CaLPenal Code § 261.5(c) entails “sexual abuse of a minor.” That’s why Velasco-Giron asks us to reject Rodriguez-Rodriguez and all of its sequels, as the Ninth Circuit did in Estrada-Espinoza (which overruled Afridi).
We promised to return to the question whether, as the Ninth Circuit believes, Chevron is inapplicable to standards. We cannot locate any such doctrine in the Supreme Court’s decisions. Just this year, for example, the Court held that the EPA’s implementation of a statute requiring each state to take account of how its emissions affect other states is covered by Chevron, even though the EPA’s approach calls for the balancing of multiple factors, including cost. EPA v. EME Homer City Generation, L.P., — U.S. -, 134 S.Ct. 1584, 188 L.Ed.2d 775 (2014). Many similar examples could be given, including the National Labor Relation Board’s vague (and shifting) specification of “únfair labor practices,” which the Board has tried vainly since its creation in 1935 to reduce to a rule. The Board’s definition of an “unfair labor practice” remains a standard, and ambulatory even by the standard of standards, but for all that one to which the Supreme Court consistently defers.
If more support were needed, Aguirre-Aguirre provides it. That decision reversed the Ninth Circuit for failing to accord Chevron deference to one of the *779 Board’s interpretive standards. An alien who committed a “serious nonpolitical crime” before entering the United States is ineligible for asylum. 8 U.S.C. § 1231(b)(3)(B)(iii) ’ (formerly § 1253(h)(2)(C)). The Board has approached “serious nonpolitical crime” in common-law fashion, ruling one crime at a time that an offense does, or doesn’t, meet this standard. It has not attempted to formulate a rule that would dictate the classification of all crimes. The Ninth Circuit was dissatisfied with the Board’s approach, but the Supreme Court held it entitled to respect under Chevron. If the Board can define “serious nonpolitical crime” one case at a time, why can’t it define “sexual abuse of a minor” one case at a time? Actually Rodriguez-Rodriguez does better than that, by drawing a precise age line at 18 and using § 3509(a)(8) as a guide.
If what the Board did in Aguirre-Aguirre was enough, what it did in Rodriguez-Rodriguez was enough. When an agency chooses to address topics through adjudication, it may proceed incrementally; it need not resolve every variant (or even several variants) in order to resolve one variant. See, e.g., SEC v. Chenery Corp., 332 U.S. 194, 203, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); Heckler v. Ringer, 466 U.S. 602, 617, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). This is “one of the earliest principles developed in American administrative law”. Almy v. Sebelius, 679 F.3d 297, 303 (4th Cir.2012).
Many judges dislike administrative adjudication because they think standards generated in common-law fashion are poorly theorized and too uncertain to give adequate notice to persons subject to regulation. Judge Friendly once held, for these reasons and others, that the NLRB must replace adjudication with rulemaking when it wants to announce rules of general application. Bell Aerospace Co. v. NLRB, 475 F.2d 485 (2d Cir.1973). But the Supreme Court was not persuaded and unanimously concluded that an agency can choose freely between rules and standards, between rulemaking and adjudication. NLRB v. Bell Aerospace Co., 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Since Bell Aerospace “[t]he Court has not even suggested that a court can constrain an agency’s choice between rulemaking and adjudication”. Richard J. Pierce, Jr., I Administrative Law Treatise § 6.9 at 510 (5th ed.2010).
Velaseo-Giron proposes a more ambitious doctrine than the one Judge Friendly favored. He wants the Board not only to replace standards with rules but also to adopt rules that are complete and self-contained. In Velaseo-Giron’s view, until the Board has solved every interpretive problem in the phrase “sexual abuse of a minor,” and shown how every possible state crime must be classified, it cannot decide how any state conviction can be classified. That requirement would be inconsistent with Aguirre-Aguirre and would send the Board on an impossible quest.
Immigration statutes are full of vague words, such as “persecution,” and vague phrases such as “crime of moral turpitude.” The Board has not found a way to solve every interpretive problem in these phrases and has chosen the common-law approach. Judges have failed to turn tort law into a set of rules; Holmes declared in The Common Law that they were bound to do so eventually, but more than 130 years have passed without the goal being nearer. Perhaps “sexual abuse of a minor” will prove equally intractable. Judges are not entitled to require the impossible, or even the answer they think best. Like the. NLRB, the FTC, the SEC, and many another agency, the BIA is a policy-making institution as well as a judi *780 cial one. It may choose standards as the best achievable policies. Just as judges do every day, the Board is entitled to muddle through.
The petition for review is denied.