# SUPREME COURT OF THE UNITED STATES

## DOUGLAS F. WHITMAN *v.* UNITED STATES

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 14–29    Decided November 10, 2014

The petition for a writ of certiorari is denied.

Statement of JUSTICE SCALIA, with whom JUSTICE THOMAS joins, respecting the denial of certiorari.

A court owes no deference to the prosecution's interpretation of a criminal law. Criminal statutes "are for the courts, not for the Government, to construe." *Abramski* v. *United States*, 573 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 21). This case, a criminal prosecution under §10(b) of the Securities Exchange Act of 1934, 48 Stat. 491, as amended, 15 U. S. C. 78j(b), raises a related question: Does a court owe deference to an executive agency's interpretation of a law that contemplates both criminal and administrative enforcement?

The Second Circuit thought it does. It deferred to the Securities and Exchange Commission's interpretation of §10(b), see *United States* v. *Royer*, 549 F. 3d 886, 899 (2008), and on that basis affirmed petitioner Douglas Whitman's criminal conviction, see 555 Fed. Appx. 98, 107 (2014) (citing *Royer*, *supra,* at 899). Its decision tilled no new ground. Other Courts of Appeals have deferred to executive interpretations of a variety of laws that have both criminal and administrative applications. See, *e.g., United States* v. *Flores*, 404 F. 3d 320, 326–327 (CA5 2005); *United States* v. *Atandi*, 376 F. 3d 1186, 1189 (CA10 2004); *NLRB* v. *Oklahoma Fixture Co.*, 332 F. 3d 1284, 1286–1287 (CA10 2003); *In re Sealed Case*, 223 F. 3d 775, 779 (CADC 2000); *United States* v. *Kanchanalak*, 192 F. 3d 1037, 1047, and n. 17 (CADC 1999); *National Rifle*

*Assn.* v. *Brady*, 914 F. 2d 475, 479, n. 3 (CA4 1990).

I doubt the Government's pretensions to deference. They collide with the norm that legislatures, not executive officers, define crimes. When King James I tried to create new crimes by royal command, the judges responded that "the King cannot create any offence by his prohibition or proclamation, which was not an offence before." *Case of Proclamations*, 12 Co. Rep. 74, 75, 77 Eng. Rep. 1352, 1353 (K. B. 1611). James I, however, did not have the benefit of *Chevron* deference. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). With deference to agency interpretations of statutory provisions to which criminal prohibitions are attached, federal administrators can in effect create (and uncreate) new crimes at will, so long as they do not roam beyond ambiguities that the laws contain. Undoubtedly Congress may make it a crime to violate a regulation, see *United States* v. *Grimaud*, 220 U. S. 506, 519 (1911), but it is quite a different matter for Congress to give agencies— let alone for us to *presume* that Congress gave agencies— power to resolve ambiguities in criminal legislation, see *Carter* v. *Welles-Bowen Realty, Inc.*, 736 F. 3d 722, 733 (CA6 2013) (Sutton, J., concurring).

The Government's theory that was accepted here would, in addition, upend ordinary principles of interpretation. The rule of lenity requires interpreters to resolve ambiguity in criminal laws in favor of defendants. Deferring to the prosecuting branch's expansive views of these statutes "would turn [their] normal construction . . . upside-down, replacing the doctrine of lenity with a doctrine of severity." *Crandon* v. *United States*, 494 U. S. 152, 178 (1990) (SCALIA, J., concurring in judgment).

The best that one can say for the Government's position is that in *Babbitt* v. *Sweet Home Chapter, Communities for Great Ore.*, 515 U. S. 687 (1995), we deferred, with scarcely any explanation, to an agency's interpretation of a law

that carried criminal penalties. We brushed the rule of lenity aside in a footnote, stating that "[w]e have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations." *Id.,* at 704, n. 18. That statement contradicts the many cases before and since holding that, if a law has both criminal and civil applications, the rule of lenity governs its interpretation in both settings. See, *e.g., Leocal* v. *Ashcroft*, 543 U. S. 1, 11–12, n. 8 (2004); *United States* v. *Thompson/Center Arms Co.*, 504 U. S. 505, 518, n. 10 (1992) (plurality opinion); *id.,* at 519 (SCALIA, J., concurring in judgment). The footnote in *Babbitt* added that the regulation at issue was clear enough to fulfill the rule of lenity's purpose of providing "fair warning" to would-be violators. 515 U. S., at 704, n. 18. But that is not the only function performed by the rule of lenity; equally important, it vindicates the principle that only the *legislature* may define crimes and fix punishments. Congress cannot, through ambiguity, effectively leave that function to the courts—much less to the administrative bureaucracy. See *United States* v. *Wiltberger*, 5 Wheat. 76, 95 (1820). *Babbitt*'s drive-by ruling, in short, deserves little weight.

Whitman does not seek review on the issue of deference, and the procedural history of the case in any event makes it a poor setting in which to reach the question. So I agree with the Court that we should deny the petition. But when a petition properly presenting the question comes before us, I will be receptive to granting it.