BOGGS, J., delivered the opinion of the court in which COOK, J., joined, and SUTTON, J., joined in part. SUTTON, J. (pp. 1027-32), delivered a separate opinion concurring in part and dissenting in part.
OPINION
BOGGS, Circuit Judge.
The Immigration and Nationality Act defines “sexual abuse of a minor” as an aggravated felony. 8 U.S.C. *1021 § 1101(a)(4S)(A). Aliens convicted of an aggravated felony face numerous criminal and civil consequences, including removal from the United States. Id. § 1227(a)(2)(A)(iii). In this case, we consider whether “sexual abuse of a minor” includes convictions under California Penal Code § 261.5(c) for unlawful sexual intercourse with a minor. Because the Board of Immigration Appeals permissibly interpreted “sexual abuse of a minor” as including convictions under section 261.5(c), we defer to the Board’s interpretation and deny Esquivel-Quintana’s petition.
I
Juan Esquivel-Quintana was admitted to the United States as a lawful permanent resident in 2000. In 2009, he pleaded guilty to unlawful sexual intercourse with a minor in California. The statute under which he was convicted provides that “[a]ny person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony.” CaLPenal Code § 261.5(c). Unlawful sexual intercourse is defined as “an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor,” and a minor is “a person under the age of 18.” Id. § 261.5(a). So, a twenty-year-old who has sex with a seventeen-year-old or a fifteen-year-old who has sex with a twelve-year-old could be convicted under the statute.
Subsequently, Esquivel-Quintana moved to Michigan. While he was in Michigan, the Department of Homeland Security initiated removal proceedings based on 8 U.S.C. § 1227(a)(2)(A)(iii), which states that an alien can be removed if he is convicted of an aggravated felony such as “sexual abuse of a minor,” id. § 1101(a)(43)(A). An immigration judge ruled that Esquivel-Quintana’s conviction under section 261.5(c) constituted “sexual abuse of a minor” and ordered him removed to Mexico. Esquivel-Quintana appealed.
A three-member panel of the Board of Immigration Appeals ruled against Es-quivel-Quintana, concluding that “sexual abuse of a minor” includes convictions under section 261.5(c). In re Esquivel-Quintana, 26 I. & N. Dec. 469, 477 (B.I.A.2015). First, the Board stated that it would determine whether convictions under section 261.5(c) categorically constitute “sexual abuse of a minor” without looking at the specific facts of the case, such as Esquivel-Quintana’s age or his victim’s. Id. at 472. The Board did so based on Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), which call for a categorical approach to assessing prior convictions in sentencing under the Armed Career Criminal Act. The Board went on to conclude that “sexual abuse of a minor” categorically encompassed convictions under section 261.5(c). The Board stated that “in the context of State statutory rape offenses, a statute that includes 16- or 17-year-olds must also contain a meaningful age differential to constitute ‘sexual abuse of a minor.’ ” Esquivel-Quintana, 26 I. & N. Dec. at 475. The Board did not specify exactly what constitutes a “meaningful” age differential, but held that the age differential in California’s statute — which requires an age gap of more than three years — was meaningful. Esquivel-Quintana now petitions for review of the Board’s decision.
II
Chevron supplies the appropriate framework for reviewing the Board’s interpretation of “sexual abuse of a minor.” *1022 Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Supreme Court and Sixth Circuit have repeatedly held that Chevron deference applies to the Board’s interpretations of immigration laws. See Scialabba v. Cuellar de Osorio, — U.S. -, 134 S.Ct. 2191, 2203, 189 L.Ed.2d 98 (2014) (plurality opinion); id. at 2214 (Roberts, C.J., concurring in the judgment); Negusie v. Holder, 555 U.S. 511, 516-17, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009); INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999); Kellermann v. Holder, 592 F.3d 700, 702 (6th Cir.2010); Singh v. Gonzales, 451 F.3d 400, 403 (6th Cir.2006). Several of our sister circuits have specifically applied Chevron in cases involving the Board’s interpretation of “sexual abuse of a minor.” See Velasco-Giron v. Holder, 773 F.3d 774, 776 (7th Cir.2014); Restrepo v. Attorney Gen. of the U.S., 617 F.3d 787, 796 (3d Cir.2010); Mugalli v. Ashcroft, 258 F.3d 52, 60 (2d Cir.2001).
Two circuits have reached a different conclusion. Amos v. Lynch, 790 F.3d 512, 518-20 (4th Cir.2015); Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1156-58 (9th Cir.2008) (en banc). But those decisions offer little guidance here. Neither Amos nor Estradar-Espinoza involved a published, precedential BIA opinion interpreting the relevant state statute. Amos, 790 F.3d at 518 (“However, the principles of Chevron deference are not applicable to the Board’s decision in Amos’s case because, although issued by a three-judge panel of the BIA, it was an unpublished decision that does not carry precedential weight.”); Estrada-Espinoza, 546 F.3d at 1157 (noting that the BIA’s decision was a “single-judge, unpublished, non-precedential” decision). Here, conversely, we owe the BIA’s precedential decision Chevron deference. See Lockhart v. Napolitano, 573 F.3d 251, 262 (6th Cir.2009). Although Amos and Estrada-Espinoza could be read to suggest that courts may forego Chevron deference to published BIA precedents solely because they establish broad standards, that proposition is, as the Seventh Circuit recently noted, at odds 'with basic black-letter administrative law. Velasco-Giron, 773 F.3d at 779; see also NLRB v. Bell Aerospace Co., 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); SEC v. Chenery Corp., 332 U.S. 194, 203, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947). There is not “a single case in which a general conferral of rulemaking or adjudicative authority has been held insufficient to support Chevron deference for an exercise of that authority within the agency’s substantive field.” City of Arlington v. FCC, — U.S. -, 133 S.Ct. 1863, 1874, — L.Ed.2d - (2013).
Generic-Definition Argument. Esquivel-Quintana is misguided in relying on Taylor for the proposition that we must ignore Chevron and create our own definition of “sexual abuse of a minor.” Taylor involved the Armed Career Criminal Act, not the Immigration and Nationality Act. While it is true that both statutes attach consequences to certain prior convictions, there are important differences as well.
The generic-definition approach established in Taylor with respect to the crime of burglary is intimately connected with the Armed Career Criminal Act’s legislative history. 495 U.S. at 581-87, 110 S.Ct. 2143. The Taylor-Court began by discussing the first version of the Armed Career Criminal Act, passed in 1984, which specifically defined “burglary” as “any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense.” Id. at 581, 110 S.Ct. 2143. The Court then recounted how Congress deleted this definition, quoting extensively from *1023 committee hearing testimony and statements by members of Congress. Id. at 582-87, 110 S.Ct. 2143. The Court concluded that “[t]he legislative history as a whole suggests that the deletion of the 1984 definition of burglary may have been an inadvertent casualty of a complex drafting process,” and on that basis adopted a generic definition of burglary. Id. at 589-90, 110 S.Ct. 2143. Given Taylor’s intimate connection with the Armed Career Criminal Act’s legislative history, we decline to read Taylor as requiring us to adopt an identical approach to interpreting the phrase “sexual abuse of a minor,” which was added to the Immigration and Nationality Act in 1996. See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009-546, 3009-627.
Rule of Lenity. Esquivel-Quintana argues that we should apply the rule of lenity and construe “sexual abuse of a minor” in his favor. According to the rule of lenity, when a criminal statute is ambiguous, that ambiguity must be resolved in the defendant’s favor. While this case is civil in nature, Esquivel-Quintana contends .that we should still apply the rule of lenity because the definition of “sexual abuse of a minor” has criminal applications.
The phrase “sexual abuse of a minor” is listed in 8 U.S.C. § 1101(a)(43)(A) as one of many crimes that constitute an aggravated felony. In addition to serving as a basis for removal, id. § 1227(a) (2) (A)(iii), an aggravated-felony conviction can also result in an enhanced sentence for aliens who are subsequently convicted of the crime of illegal reentry, id. § 1326(b)(2). The term aggravated felony is also used to define the crime of assisting certain inadmissible aliens with entering the United States illegally. Id. § 1327. Thus, the phrase “sexual abuse of a minor” has both civil and criminal applications.
An increasingly emergent view asserts that the rule of lenity ought to apply in civil cases involving statutes that have both civil and criminal applications. See Whitman v. United States, — U.S. -, 135 S.Ct. 352, 352-54, 190 L.Ed.2d 381 (2014) (Scalia, J., statement respecting denial of certiorari); Carter v. Welles-Bowen Realty, Inc., 736 F.3d 722, 729-36 (6th Cir.2013) (Sutton, J., concurring). This view is based on two principles. First, statutory terms should not have different meanings in different cases — “a statute is not a chameleon.” Carter, 736 F.3d at 730. Second, ambiguous statutes must be construed in favor of defendants under the rule of lenity. The rule of lenity ensures that the public has adequate notice of what conduct is criminalized, and preserves the separation of powers by ensuring that legislatures, not executive officers, define crimes. Taken together, these two principles lead to the conclusion that the rule of lenity should apply in civil cases involving ambiguous statutes with criminal applications.
There are compelling reasons to apply the rule of lenity in such cases. Giving deference to agency interpretations of ambiguous laws with criminal applications would allow agencies to “create (and un-create) new crimes at will, so long as they do not roam beyond ambiguities that the laws contain.” Whitman, 135 S.Ct. at 353. Writing criminal laws is the legislature’s prerogative, not the executive’s. Furthermore, deferring to agency interpretations of criminal laws violates the principle that “criminal laws are for courts, not for the Government, to construe.” Abramski v. United States, — U.S. -, 134 S.Ct. 2259, 2274, 189 L.Ed.2d 262 (2014). Left unchecked, deference to agency interpretations of laws with criminal applications *1024 threatens a complete undermining of the Constitution’s separation of powers.
Nonetheless, while this view is increasing in prominence, the Supreme Court has not made it the law. To the contrary, the Court has reached the opposite conclusion. In Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, the Court deferred to the Secretary of the Interior’s definition of the term “take” in the Endangered Species Act of 1973, even though violations of the act could be enforced by criminal penalties. 515 U.S. 687, 703-04, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995). The Court expressly considered and rejected the rule of lenity: “We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement.” Id. at 704 n. 18, 115 S.Ct. 2407.
Since then, the Supreme Court has suggested that the rule of lenity should apply in such cases. In Leocal v. Ashcroft, the Court omitted any discussion of Chevron in reviewing a Board of Immigration Appeals decision interpreting 8 U.S.C. § 1101(a)(43)(F). 543 U.S. 1, 8-13, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). That provision states that a conviction for a “crime of violence (as defined in section 16 of Title 18, but not including a purely political offense)” counts as an aggravated felony if it is punishable by at least one year of imprisonment. The Court held that “crime of violence” did not include the petitioner’s Florida DUI conviction, and added in dicta in a footnote:
Even if § 16 lacked clarity on this point, we would be constrained to interpret any ambiguity in the statute in petitioner’s favor. Although here we deal with § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.
Id. at 11 n. 8, 125 S.Ct. 377. Similarly, in Hasten v. Sainh-Gobain Performance Plastics Corp., 563 U.S. 1, 131 S.Ct. 1325, 1336, 179 L.Ed.2d 379 (2011), and Maracich v. Spears, — U.S. -, 133 S.Ct. 2191, 2209, 186 L.Ed.2d 275 (2013), the Court suggested that the rule of lenity could apply if an ambiguity existed, but had no occasion to apply it because the statute was unambiguous.
While the Court has begun to distance itself from Babbitt, we do not read dicta in Leocal and subsequent cases as overruling Babbitt, or requiring that we apply the rule of lenity here in Esquivel-Quintana’s civil removal proceeding. As an “inferior” court, our job is to adhere faithfully to the Supreme Court’s precedents. The Supreme Court has said that we must follow Chevron in cases involving the Board’s interpretations of immigration laws. See Scialabba, 134 S.Ct. at 2203 (plurality opinion); id. at 2214 (Roberts, C.J., concurring in the judgment); Negusie, 555 U.S. at 516-17, 129 S.Ct. 1159; Aguirre-Aguirre, 526 U.S. at 424-25, 119 S.Ct. 1439. This is not an “extraordinary” case. King v. Burwell, — U.S. -, 135 S.Ct. 2480, 2488, 192 L.Ed.2d 483 (2015). Chevron applies.
Ill
Under Chevron, we employ the traditional tools of statutory interpretation and ask whether the statute is ambiguous; if it is, we defer to the agency’s permissible interpretations. As some have noted, a more elegant formulation. of the inquiry might simply be: Has the agency permissibly interpreted the statute? See, e.g., Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 218 & n. 4, 129 S.Ct. 1498, 173 *1025 L.Ed.2d 369 (2009); Singh, 451 F.3d at 403 (“We ... defer to the BIA’s reasonable interpretations of the INA.” (quoting Patel v. Gonzales, 432 F.3d 685, 692 (6th Cir.2005))); Matthew C. Stephenson & Adrian Vermeule, Chevron Has Only One Step, 95 Va. L.Rev. 597 (2009).
The Board permissibly interpreted “sexual abuse of a minor” as including violations of California Penal Code § 261.5(c). When Congress used the ambiguous words “sexual abuse of a minor,” it declined to specify a particular age of majority or age differential for statutory rape. Nowhere in the statute did .Congress specify the definitions of “sexual abuse” or “minor.” Congress left these questions open to interpretation by the Board of Immigration Appeals. See Contreras v. Holder, 754 F.3d 286, 293 (5th Cir.2014) (“Here, there is no question that Congress has not directly spoken on the definition of sexual abuse of a minor.”).
Faced with this ambiguity, the Board has interpreted “sexual abuse” by referring to the definition of the term in 18 U.S.C. § 3509(a)(8). In re Rodriguez-Rodriguez, 22 I. & N. Dec. 991, 995-96 (B.I.A.1999). That provision defines “sexual abuse” as “the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children.” Furthermore, the Board draws its definition of “minor” from 18 U.S.C. § 3509(a)(2), which defines a “child” as a person under eighteen. In re V-F-D-, 23 I. & N. Dec. 859, 862 (B.I.A.2006). In choosing eighteen as the age of majority, the Board acknowledged the existence of a statute — 18 U.S.C. § 2243(a), titled “sexual abuse of a minor or ward” — that makes it a federal crime to have sex with a, person who is less than sixteen years old, at least twelve years old, and at least four years younger than the perpetrator. Id. at 861-62. The Board declined to limit the meaning of “sexual abuse of a minor” to this particular definition, drawn from a different statute passed at a different time, because in its view “Congress intended to expand, rather than limit, the age at which a person is considered a minor.” Id. at 862 n. 7. The Board elaborated on its interpretation of “sexual abuse of a minor” in this case, holding that the phrase includes convictions under a state statutory-rape law that protects sixteen- and seventeen-year-old victims while also requiring a meaningful age differential between the perpetrator and the victim. Esquivel-Quintana, 26 I. & N. Dec. at 477.
Nothing forbids the Board’s interpretation. Indeed, there are strong arguments that support it. As the Seventh Circuit has noted, multiple criminal provisions of the United States Code define a “minor” as a person under eighteen. Velasco-Giron, 773 F.3d at 775. For the crime of “sexual exploitation of children,” “minor” is defined as any person under the age of eighteen. 18 U.S.C. §§ 2251, 2256(1). Eighteen is also the age of majority for the crime of transporting a “minor” with intent to engage in criminal sexual activity. 18 U.S.C. § 2423(a). The Fifth Circuit has held that, as a matter of federal law under the Sentencing Guidelines, a “minor” in the phrase “sexual abuse of a minor” is a person under the age of eighteen. United States v. Rodriguez, 711 F.3d 541, 548 (5th Cir.2013) (en banc). With so many sources defining the age of majority as eighteen, the Board’s interpretation certainly qualifies as permissible.
Following the narrow definition of “minor” in § 2243(a) is neither compelled nor sensible. That statute applies only when the sexual-abuse victim is at least twelve *1026 years old. Victims younger than twelve are protected by a separate statute, § 2241(c), under the crime of “aggravated sexual abuse.” Using § 2243(a) as the sole defíner of “minor” would mean that abuse against an eleven-year-old does not constitute “sexual abuse of a minor.” Furthermore, it would mean that a seventeen-year-old abusing a twelve-year-old has committed “sexual abuse of a minor,” but a fifteen-year-old doing the same thing has not done so.
The age requirements of § 2243(a) were crafted with § 2241(c) in mind. Those two provisions were enacted side-by-side in the Sexual Abuse Act of 1986, Pub.L. No. 99-646, § 87100 Stat. 3620, 3620-21, which came into effect ten years before the phrase “sexual abuse of a minor” was added to 8 U.S.C. § 1101(a)(43)(A) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. at 3009-627. We should not haphazardly import the requirements of § 2243(a) into a completely different statute.
Congress could have included a cross-reference to § 2243(a) if it wanted to incorporate that definition of statutory rape. The Immigration and Nationality Act is replete with cross-references to federal statutes defining crimes that count as aggravated felonies. See 8 U.S.C. § 1101(a)(48)(B), (C), (D), (E), (F), (H), (I), (J), (K)(ii)-(iii), (L), (M)(ii), (N), (O), (P). When Congress declined to cross-reference a federal statute, it did so because it wanted to sweep in a broad array of state-law convictions. Cf. 8 U.S.C. § 1101(a)(43) (“The term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law....”). “[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Importing word-for-word the statutory-rape requirements of § 2243(a) would be contrary to Congress’s intent to allow state-law convictions to serve as grounds for removal.
The Second, Third, and Seventh Circuits all explicitly considered and rejected the argument that “sexual abuse of a minor” is limited to statutes that go no further than § 2243(a). The Second Circuit concluded that it is “unlikely in the extreme that Congress intended such a lowest common denominator result,” and upheld the removal of an alien convicted under New York’s statutory-rape law. Mugalli, 258 F.3d at 60. The Third Circuit stated that it would not “conjoin the meaning of words used in separate and distinct statutes,” and upheld the removal of an alien convicted under New Jersey’s “aggravated criminal sexual contact” law. Restrepo, 617 F.3d at 794. The Seventh Circuit observed that the Board “must administer ... 8 U.S.C. § 1101(a)(43)(A), not 18 U.S.C. § 2243(a),” and upheld the removal of an alien convicted under the precise California statute involved in this case. Velasco-Giron, 773 F.3d at 777. We join the Second, Third, and Seventh Circuits in rejecting the unwarranted adoption of § 2243(a), and hold that the Board permissibly interpreted “sexual abuse of a minor” as including convictions under California Penal Code § 261.5(c).
IV
If Congress had supplied its own definition of “sexual abuse of a minor” in 8 U.S.C. § 1101(a)(43)(A), this case would be easy. But Congress did not. That is why the Board of Immigration Appeals chose to interpret the phrase through case-by-case adjudication. Supreme Court and Sixth *1027 Circuit precedent require us to defer to the Board’s interpretation if it is permissible.
The Board permissibly interpreted “sexual abuse of a minor” as encompassing convictions under California Penal Code § 261.5(c). Nothing in the statute forbids this interpretation. Esquivel-Quintana’s petition is DENIED.