SUTTON, Circuit Judge,
concurring in part and dissenting in part.
CONCURRING IN PART AND DISSENTING IN PART
I agree with every part of the court’s opinion but one: that a sentence from a footnote in a 1995 Supreme Court opinion requires us to apply Chevron deference, as opposed to the rule of lenity, to an agency interpretation of an ambiguous statute that has civil and criminal applications. See Babbitt v. Sweet Home Chapter of Communities for a Great Or., 515 U.S. 687, 704 n. 18, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995).
Let me start with our many areas of agreement.
Chevron permits agencies to fill gaps in civil statutes that Congress has delegated authority to the agency to interpret. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under the doctrine, courts presume that, when Congress leaves an ambiguity in an agency-administered statute, it intends the agency to fill the gap. Id. at 843-44, 104 S.Ct. 2778.
But Chevron has no role to play in construing criminal statutes. In 227 years and counting, the federal courts have never presumed that, when an ambiguity arises in a criminal statute, the congressional silence signals that Congress wants an executive-branch agency to fill the gap. For all of the theories of Chevron that have filled the U.S. Reports and the Federal Reporter, to say nothing of the law journals, the idea that Chevron is a tool for construing criminal statutes has yet to make an appearance. That is because criminal statutes “are for courts, not for the Government, to construe.” Abramski v. United States, — U.S. -, 134 S.Ct. 2259, 2274, 189 L.Ed.2d 262 (2014). The doctrine does not give the Department of Justice (or for that matter any other federal agency) implied gap-filling authority over ambiguous criminal statutes.
Otherwise, that would leave this distasteful combination: The prosecutor would have the explicit (executive) power to enforce the criminal laws, an implied (legislative) power to fill policy gaps in ambiguous criminal statutes, and an implied (judicial) power to interpret ambiguous criminal laws. Cf. The Federalist No. 47, at 297-99 (James Madison) (Clinton Rossiter ed., 1961). And it would permit this aggregation of power in the one area where its division matters most: the removal of citizens from society.
There may be good reason to debate the merits of Chevron today. Compare Philip Hamburger, Is Administrative Law Unlawful? (2014), with Adrian Vermeule, No, 93 Tex. L.Rev. 1547 (2015) (book review). But all can agree that, whatever the connection between ancient royal prerogatives and the like to modern agency law, Chevron has no role to play in the interpretation of criminal statutes.
The application of Chevron to criminal laws also would leave no room for the rule of lenity, a rule that resolves ambiguities in criminal statutes in favor of the individual and a rule of construction that Chief Justice Marshall described as “perhaps not much less old than construction itself.” United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). The *1028 rule “rests on concerns about notice (the state ought to provide fair warning of what violates the criminal laws) and separation of powers (Congress, not agencies or courts, defines crimes).” Carter v. Welles-Bowen Realty, Inc., 736 F.3d 722, 729 (6th Cir.2013) (Sutton, J., concurring).
So far so good.
But what happens when the same statute has criminal and civil applications? May Congress sidestep these requirements by giving criminal statutes a civil application? The answer is no. The courts must give dual-application statutes just one interpretation, and the criminal application controls. Statutes are not “chameleon[s]” that mean one thing in one setting and something else in another. Id. at 730. Because a single law should have a single meaning, the “lowest common denominator” — including all rules applicable to the interpretation of criminal laws— governs all of its applications. Clark v. Martinez, 543 U.S. 371, 380, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005). That explains why United States v. Thompson/Center Arms Co. applied the rule of lenity to a civil tax case that turned on language that had civil and criminal applications. 504 U.S. 505, 517-18 & n. 10, 112 S.Ct. 2102, 119 L.Ed.2d 308 (plurality opinion); id. at 519, 112 S.Ct. 2102 (Scalia, J-., concurring in the judgment). Time, time, and time again, the Court has confirmed that the one-interpretation rule means that the criminal-law construction of the statute (with the rule of lenity) prevails over the civil-law construction of it (without the rule of lenity). When a single statute has twin applications, the search for the least common denominator leads to the least liberty-infringing interpretation. See, e.g., Maracich v. Spears, — U.S. -, 133 S.Ct. 2191, 2209, 186 L.Ed.2d 275 (2013); Basten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 16, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011); Clark, 543 U.S. at 380, 125 S.Ct. 716; Leocal v. Ashcroft, 543 U.S. 1, 11 n. 8, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004); Scheidler v. Nat’l Org. for Women, 537 U.S. 393, 408-09, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003).
The provision at issue in today’s case is subject to the one-statute/one-interpretation rule because it has criminal and civil applications. The Immigration and Nationality Act makes a state or federal conviction for “sexual abuse of a minor” an “aggravated felony.” 8 U.S.C. § 1101(a)(43)(A). The Act subjects aliens who have committed aggravated felonies (1) to civil consequences, most notably removal from the country, id. § 1227(a)(2) (A)(iii); see also id. § 1229b(a)(3), and (2) to criminal consequences, most notably increasing the maximum prison term for illegal reentry into the United States, id. § 1326(b)(2); see also id. § 1327.
The phrase “sexual abuse of a minor” is ambiguous as applied to the' California law that Esquivel-Quintana violated.- The state law prohibits sexual intercourse with anyone under eighteen, provided the perpetrator is not the victim’s spouse and is more than three years older than the victim. CaLPenal Code § 261.5(a), (c). The age requirement found in statutory-rape statutes like this one turns on the premise that those below a certain age generally cannot consent to sex. The ambiguity arises over when a “minor” can consent and when the sexual act ceases to be abusive. The minimum conduct criminalized by the California law involves seventeen-year-old victims. Id. § 261.5(a). Because the meaning of “sexual abuse of a minor” is a matter of federal law, the question is whether California’s statutory-rape law includes these victims under a “ ‘generic’ federal definition.” Moncrieffe *1029 v. Holder, — U.S. -, 133 S.Ct. 1678, 1684, 185 L.Ed.2d 727 (2013).
A division in the circuits over the point suggests this answer: maybe, maybe not. One court has concluded that the phrase includes statutory-rape convictions involving seventeen-year-old victims. See, e.g., Contreras v. Holder, 754 F.3d 286, 294-96 (5th Cir.2014). One court has said it does not. E.g., Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1157 n. 7, 1158-60 (9th Cir.2008) (en banc). And at least one court isn’t sure. E.g., Velasco-Giron v. Holder, 773 F.3d 774, 776-78 (7th Cir.2014).
The rest of the federal criminal code doesn’t make things any easier. Title 18 includes a crime entitled “sexual abuse of a minor,” a statutory-rape crimp that requires the victim to be under sixteen. 18 U.S.C. § 2243(a). But it also includes protections for “child” victims of “sexqal abuse” in a setting in which the legislature uses the terms “minor” and “child” interchangeably, see id. § 2251, and applies those protections to victims under eighteen, id. § 3509(a)(2), (8). As a matter of history, the term “minor” has always been a fluid concept. It referred to those under twenty-one at the founding. See 1 William Blackstone, Commentaries *463.
Adding to the ambiguity is the question of perspective — which of two ways the interpreter looks at the statute and how closely it ties the word “minor” to the term “sexual abuse.” Cf. United States v. Castleman, — U.S. -, 134 S.Ct. 1405, 1411-12, 188 L.Ed.2d 426 (2014); id. at 1420 (Scalia, J., concurring in part and concurring in the judgment). At one end, the word “minor” taken by itself might generally be said to refer to “[sjomeone who has not reached full legal age.” Black’s Law Dictionary 1147 (10th ed.2014). The full legal age, the “age of majority,” is typically eighteen — at least in most instances today. Id. at 73. This approach led the Fifth Circuit and the Board of Immigration Appeals to conclude “sexual abuse of a minor”'captures many statutory-rape crimes, .with each State allowed to set an age (no higher than eighteen) below which minors generally cannot consent. Contreras, 754 F.3d at 294-96; In re Esquivel-Quintana, 26 I. & N. Dec. 469, 471 (B.I.A.2015); see also United States v. Rodriguez, 711 F.3d 541, 559-62 (5th Cir.2013) (en banc).
At the other end, a court might just as fairly focus on the reality that the word “minor” is tied to “sexual abuse” and statutory-rape laws. In that context, the word “minor” would not necessarily refer to “full legal age” but to the age at which a State no longer deems sex nonconsensual (and therefore abusive). See Black’s Law Dictionary 1451. That age, the “age of consent,” is typically sixteen. Id. at 73; see United States v. Rangel-Castaneda, 709 F.3d 373, 377 (4th Cir.2013). This approach led the Ninth Circuit to decide that statutory-rape convictions amount to “sexual abuse of a minor” only if they require victims to be below the age of sixteen. Estrada-Espinoza, 546 F.3d at 1158. The Fourth Circuit took a similar approach when interpreting the same phrase in the Sentencing Guidelines. Rangel-Castaneda, 709 F.3d at 380-81.
Either reading has much to commend it, making the phrase ambiguous and making this a classic occasion for applying the rule of lenity. All clues considered, the phrase “sexual abuse of a minor” may, but may not, include convictions under California’s § 261.5(c), and for that reason the rule of lenity should end the case in favor of the immigrant.
The application of Chevron to this ambiguity of course leads to a different result. A statute sufficiently ambiguous to invoke the rule of lenity assuredly is sufficiently *1030 ambiguous to trigger Chevron deference. And adjudicative decisions by the Board typically receive Chevron deference. See, e.g., INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). That means, as the court explains, that the Board’s decision that Esquivel-Quintana’s § 261.5(c) conviction amounts to “sexual abuse of a minor” prevails under Chevron deference. But it also means, as the court explains, that this interpretation would not prevail under the rule of lenity, where “sexual abuse of a minor” would cover no more than those statutory-rape crimes that set the age of consent at sixteen or less.
Yet the application of Chevron in this setting, as the court acknowledges, “threatens a complete undermining of the Constitution’s separation of powers,” while the application of the rule of lenity “preserves” them by maintaining the legislature as the creator of crimes. Supra at 1023-24. Lenity also ensures fair notice of criminal consequences, precludes the same agency from altering criminal laws back and forth over time (even over conflicting judicial interpretations, see Nat’l Cable & Telecomm. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 980-85, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005), and even without input from Congress), and ensures that the same “[r]ules of interpretation bind all interpreters, administrative agencies included.” Carter, 736 F.3d at 729, 731 (Sutton, J., concurring). Lenity also avoids several “uninvited oddities [that] arise if courts but not agencies must adhere to the rule of lenity.” Id. at 732-33 (collecting some of them). By applying lenity in this setting, last of all, courts would avoid incentivizing Congress to enact hybrid statutes that duck under lenity’s imperatives, to say nothing of other imperatives in construing criminal laws.
Where I part ways with the court is over its conclusion that, even though the rule of lenity ought to control here, we must defer to the government’s position under Chevron all the same.
The disagreement boils down to the meaning of one sentence in one footnote. Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995), involved a facial challenge to a regulation interpreting a provision of the Endangered Species Act that imposed both civil and criminal liability. Id. at 691-93, 115 S.Ct. 2407. The Supreme Court decided it “owe[d] some degree of deference” to the Department of Labor’s interpretation, id. at 703-04, 115 S.Ct. 2407, and cited Chevron in the process. Then, in a footnote, it said that it “ha[d] never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement.” Id. at 704 n. 18, 115 S.Ct. 2407. This statement does not, as the court claims, require us to apply Chevron. If it did, the footnote would have (silently) overruled an entire line of cases that “hold that, if Congress wants to assign responsibility for crime definition to the executive, it must speak clearly.” Carter, 736 F.3d at 734 (Sutton, J., concurring); see, e.g., United States v. Grimaud, 220 U.S. 506, 519, 31 S.Ct. 480, 55 L.Ed. 563 (1911); see also Touby v. United States, 500 U.S. 160, 165-67, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991). And the footnote expressly limits itself to “facial challenges,” the sorts of claims that raise arguments — say that the regulation exceeded the agency’s authority and thus was unenforceable in all of its applications — that have no connection to the rule of lenity. Today’s case does not involve a facial challenge.
Whatever this footnote and its inscrutable reference to facial challenges meant *1031 then, cases since Babbitt have not followed the reading the court finds itself constrained to follow. In one case, the Court declined to address how the rule of lenity applied in relation to Chevron, hardly necessary if Babbitt answered the question for cases that did not involve facial challenges to regulations. See Solid Waste Agency v. U.S. Army Corps of Eng’rs, 531 U.S. 159, 174 & n. 8, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). In another case, the Court concluded that the rule of lenity provided the rule of decision, hardly possible if the issue had been decided the other way. If a statute “has both criminal and noncriminal applications,” the Court explained, the presence of ambiguity triggers the rule of lenity “[b]eeause we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context.” Leocal, 543 U.S. at 11 n. 8, 125 S.Ct. 377. And in a concurrence from the denial of certiorari from a securities law case, two Justices agreed that “Babbitt’s drive-by” footnote “deserves little weight.” Whitman v. United States, — U.S. -, 135 S.Ct. 352, 354, 190 L.Ed.2d 381 (Scalia, J., statement respecting denial of certiora-ri, joined by Thomas, J.).
Perhaps something else gives the court pause today — the potential sticker shock of transforming a government-always-wins canon (Chevron) into a government-always-loses canon (rule of lenity). But that may not be where the Court’s cases necessarily lead. The Court’s recent cases, as shown, just require two things: that the one-statute/one-interpretation rule governs dual-role statutes, and Chevron does not apply to that one interpretation. Those two requirements, however, may not dictate when the rule of lenity governs and when it does not. Yes, the rule of lenity frequently may dictate that one interpretation but that need not invariably be the case. Statutory “ambiguity” may mean one thing under Chevron and something else under the rule of lenity. If American Inuits have more than one way to describe snow, American lawyers may have more than one way to describe ambiguity. See Bill Bryson, The Mother Tongue 14-15 (2001). Under Chevron, courts will defer to an agency interpretation if the relevant statute “is silent or ambiguous with respect to the specific issue.” 467 U.S. at 843, 104 S.Ct. 2778. It remains to be seen whether the same type of ambiguity triggers the rule of lenity. See, e.g., Huddleston v. United States, 415 U.S. 814, 831, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). Chevron’s domain and the rule of lenity’s domain thus may not necessarily overlap in some cases.
What matters for present purposes is that Chevron has no role to play in construing hybrid statutes. Whether the rule of lenity necessarily will provide the answer in all of these cases is another matter, one for the Court ultimately to decide. In some settings, it may turn out, the Court simply will apply the normal rules of construction unaided by a zero-sum default rule, and will look to the rule of lenity only in the kinds of interpretive disputes that require it.
One last point. An exception to Chevron for dual-role statutes would not be the least bit unusual. Deference under that rule is categorically unavailable, the Supreme Court has held, in many settings: (1) agency interpretations of statutes the agency is not “charged with administering,” Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 137 n. 9, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997); (2) agency interpretations of “the scope of the judicial power vested by [a] statute,” such as the availability of a private right of action, Adams Fruit Co. v. Barrett, 494 U.S. 638, 649-50, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990); see Alexander v. Sandoval, 532 U.S. 275, 288-91, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); (3) agency interpretations that result from *1032 procedures that were not “in the exercise” of the agency’s authority “to make rules carrying the force of law,” United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); (4) agency interpretations with respect to “extraordinary cases” where it is unlikely Congress “intended ... an implicit delegation” to the agency, King v. Burwell, — U.S. -, 135 S.Ct. 2480, 2488-89, 192 L.Ed.2d 483 (2015); and (5) agency interpretations of criminal statutes, Abramski, 134 S.Ct. at 2274. An exception for statutes with civil and criminal consequences fits easily alongside these exceptions and originates from the same place as the last one. Indeed, it is exceedingly difficult to understand how Chevron could prevail in a dual-statute case. Since the founding, it has been the job of Article III courts, not Article II executive-branch agencies, to have the final say over what criminal laws mean. I would honor that imperative here and reject the idea that Congress can end-run this principle by giving a criminal statute a civil application.
For these reasons, I concur with much of the court’s reasoning but must disagree with its conclusion.