# Matter of Jose AGUILAR-BARAJAS, Respondent

*Decided July 30, 2021*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The offense of aggravated statutory rape under section 39-13-506(c) of the Tennessee Code Annotated is categorically a "crime of child abuse" within the meaning of section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2018).

(2)  The Supreme Court's holding that a statutory rape offense does not qualify as "sexual abuse of a minor" based solely on the age of the participants, unless it involves a victim under 16, does not affect our definition of a "crime of child abuse" in *Matter of Velazquez-Herrera*, 24 I&N Dec. 503 (BIA 2008), nor does it control whether the respondent's statutory rape offense falls within this definition.  *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017), *distinguished*.

FOR RESPONDENT:  Sean Lewis, Esquire, Nashville, Tennessee

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Peter Gannon, Associate Legal Advisor

BEFORE:  Board Panel:  HUNSUCKER, Appellate Immigration Judge; NOFERI, Temporary Appellate Immigration Judge.  Concurring and Dissenting Opinion:  PETTY, Appellate Immigration Judge.

HUNSUCKER, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") has appealed from the Immigration Judge's November 13, 2019, decision terminating the respondent's removal proceedings.  The respondent has filed an opposing brief.[1]  The appeal will be sustained, the proceedings will be reinstated, and the record will be remanded.

The respondent is a native and citizen of Mexico who was admitted to the United States as a lawful permanent resident in 2000.  On April 29, 2019, he

---

[1]  We requested and received supplemental briefing from the parties addressing whether the respondent's conviction for aggravated statutory rape in violation of Tennessee law is a conviction for a "crime of child abuse" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2018).  We further asked the parties to address the impact, if any, of *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017), on the respondent's removability.

was convicted of two counts of aggravated statutory rape in violation of section 39-13-506(c) of the Tennessee Code Annotated. Based on this conviction, the DHS placed him in removal proceedings and charged him with removability under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2018), as a noncitizen convicted of a "crime of child abuse, child neglect, or child abandonment."[2] The respondent denied the charge of removability, and the Immigration Judge terminated proceedings after concluding that his offense was not a "crime of child abuse, child neglect, or child endangerment" under the Act. The DHS challenges this determination on appeal. Whether the respondent's conviction is for a "crime of child abuse, child neglect, or child endangerment" under the Act is a question of law that we review de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2020).

We have interpreted the term "crime of child abuse, child neglect, or child abandonment" in section 237(a)(2)(E)(i) of the Act broadly and defined it as

> any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in prostitution, pornography, or other sexually explicit conduct; as well as any act that involves the use or exploitation of a child as an object of sexual gratification or as a tool in the commission of serious crimes, such as drug trafficking.

*Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 512 (BIA 2008); *see also Matter of Soram*, 25 I&N Dec. 378, 381 (BIA 2010) (clarifying that "the phrase 'a crime of child abuse, child neglect, or child abandonment' in section 237(a)(2)(E)(i) of the Act denotes a unitary concept and that our broad definition of child abuse [in *Velazquez-Herrera*] describes the entire phrase").[3] In *Matter of Soram*, we further clarified that the phrase "crime of child abuse" includes endangerment-type offenses that pose a threat to the life or health of a child, regardless of whether there is actual harm or injury to a child. 25 I&N Dec. at 381–83; *see also Matter of Mendoza Osorio*, 26

---

[2] The DHS also charged the respondent with removability under section 237(a)(2)(A)(ii) of the Act, as a noncitizen convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. However, the DHS does not challenge the Immigration Judge's conclusion that the respondent is not removable under this provision. *See Matter of A-C-A-A-*, 28 I&N Dec. 351, 352–53 (A.G. 2021) (providing that we may rely on the DHS's decision not to contest certain issues on appeal).

[3] For brevity, hereinafter we will use the phrase "crime of child abuse" to refer to the definition of a "crime of child abuse, child neglect, or child endangerment."

I&N Dec. 703, 706, 711–12 (BIA 2016) (concluding that endangering the welfare of a child under New York Law, which requires knowingly acting in a manner likely to be injurious to a child, is a "crime of child abuse" under the Act).  For purposes of section 237(a)(2)(E)(i), a "child" is "an individual who ha[s] not yet reached the age of 18 years." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512.

The statute under which the respondent was convicted defines aggravated statutory rape as "the unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." Tenn. Code Ann. § 39-13-506(c) (West 2019); *see also* Tenn. Code. Ann. § 39-13-501(7) (defining "sexual penetration" for purposes of section 39-13-506(c) as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required").

To determine whether the respondent's offense is a "crime of child abuse" under the Act, we employ the categorical approach, under which we disregard his actual conduct and focus instead on the elements of section 39-13-506(c) and the minimum conduct that has a realistic probability of being prosecuted under the statute. *Matter of Mendoza Osorio*, 26 I&N Dec. at 705–06; *Matter of Velazquez-Herrera*, 24 I&N Dec. at 513–15.  The minimum conduct criminalized under section 39-13-506(c) is sexual penetration between a victim who is 17 years old and a perpetrator who is 27 years old.

The respondent asserts that we must incorporate the Supreme Court's articulation in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017), of what constitutes aggravated felony "sexual abuse of a minor" under section 101(a)(43)(A) of the Act, 8 U.S.C. § 1101(a)(43)(A) (2018), into the definition of "crime of child abuse" under section 237(a)(2)(E)(i) of the Act. In that case, the Court held that "in the context of statutory rape offenses focused solely on the age of the participants, the generic federal definition of 'sexual abuse of a minor' under [section 101(a)(43)(A)] requires the age of the victim to be less than 16." *Id.* at 1572–73.  Applying *Esquivel-Quintana*, the respondent argues that his statutory rape offense is not a "crime of child abuse" under the Act because it reaches crimes against victims who are 16 and 17 years old.

However, in *Esquivel-Quintana*, 137 S. Ct. at 1567, the Supreme Court addressed a narrow question, namely, "whether a conviction under a state statute criminalizing consensual sexual intercourse between a 21-year-old and a 17-year-old qualifies as sexual abuse of a minor under" section

101(a)(43)(A) of the Act. The Court found it highly significant that the phrase "sexual abuse of a minor" appears in the "*aggravated felony*" definition and "in the same subparagraph as 'murder' and 'rape[]'—among the most heinous crimes [the Act] defines as aggravated felonies." *Id.* at 1570 (emphasis added) (citations omitted). The Court reasoned that this "structure" of section 101(a)(43)(A) of the Act supports the conclusion that Congress intended the phrase "sexual abuse of a minor" to "encompass[] only especially egregious felonies." *Id.* The Court concluded that "for a statutory rape offense to qualify as sexual abuse of a minor under the [Act] based solely on the age of the participants, the victim must be younger than 16." *Id.* Notably, the Court left open the possibility that "sexual abuse of a minor" could cover offenses involving a "special relationship of trust," where both participants were over the age of 16 and engaging in consensual sexual activity. *Id.* at 1572.

We do not assume that the Court would lightly extend its narrow holding regarding "sexual abuse of a minor" to the distinct statutory phrase "crime of child abuse" under section 237(a)(2)(E)(i), which is not an aggravated felony and does not have the same structure as section 101(a)(43)(A) of the Act. *See, e.g.*, *Matthews v. Barr*, 927 F.3d 606, 616 (2d Cir. 2019) (acknowledging that the "holding in *Esquivel-Quintana* was narrow and its decision did not relate to the [Act's] crime of child abuse provision"); *Mondragon-Gonzalez v. Att'y Gen. of the U.S.*, 884 F.3d 155, 160 (3d Cir. 2018) (holding that "*Esquivel-Quintana* has no application . . . at all" to the definition of a "crime of child abuse" under section 237(a)(2)(E)(i). Moreover, as noted, the narrow holding of *Esquivel-Quintana* declined to conclusively resolve whether consensual sexual activity between persons ages 16 and older who are in a special relationship of trust can be classified as "sexual abuse of a minor."

Significantly, the United States Court of Appeals for the Fifth Circuit, in whose jurisdiction this case arises, has concluded that "*Esquivel-Quintana* has no application" to whether a State offense qualifies as a "crime of child abuse" under the Act because the "Court's narrow holding didn't relate to the child-abuse provision in [section 237(a)(2)(E)(i)], mandate a particular approach to statutory interpretation, or cast doubt on the Board's definition of child abuse." *Garcia v. Barr*, 969 F.3d 129, 134 (5th Cir. 2020); *see also Adeeko v. Garland*, No. 19-60703, 2021 WL 2709353, at *2–3 (5th Cir. July 1, 2021) (concluding that *Garcia* controls in the context of a "crime of child abuse" and upholding the conclusion that *Esquivel-Quintana* "only applie[s] to convictions for 'sexual abuse of a minor'" under section 101(a)(43)(A)).

In *Garcia*, the Fifth Circuit held that the phrase "crime of child abuse" under the Act is ambiguous and our interpretation of that phrase, as

articulated in *Matter of Velazquez-Herrera* and *Matter of Soram*, is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* ("*Chevron*"), 467 U.S. 837 (1984). *Garcia*, 969 F.3d at 132–34.[4] The court explicitly noted that our definition "embraces many crimes, including those that entail infliction of 'mental or emotional harm,' 'sexual abuse, including direct acts of sexual contact,' or 'the use or exploitation of a child as an object of sexual gratification,'" and it observed that "[f]or purposes of this definition, a 'child' is 'anyone under the age of eighteen.'" *Id.* at 133 (quoting *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512). Finally, the court held that *Esquivel-Quintana* did not affect the court's *Chevron* analysis "because the statutory text there was unambiguous—unlike the child-abuse provision here." *Id.* at 134. We agree with the Fifth Circuit's reasoning in *Garcia*, because it is consistent with our interpretation of the phrase "crime of child abuse," the Court's holding in *Esquivel-Quintana*, and Congress' overall statutory scheme setting forth immigration consequences for crimes against children.

Although we have acknowledged that "sexual abuse of a minor" under section 101(a)(43)(A) is related to a "crime of child abuse" under section 237(a)(2)(E)(i), we have also stated that they are separate grounds of removability. *See Matter of Soram*, 25 I&N Dec. at 381. For the following reasons, we conclude that section 237(a)(2)(E)(i) covers a broader range of criminal conduct than the "sexual abuse of a minor" aggravated felony provision.

In 1996, Congress engaged in "an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a 'comprehensive statutory scheme to cover crimes against children' in particular." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 508–09 (citation omitted); *see also Matter of Soram*, 25 I&N Dec. at 383–84. As part of that comprehensive statutory scheme, Congress added "sexual abuse of a minor" to section 101(a)(43)(A) of the Act, alongside references to "murder" and "rape." Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, § 321(a)(1), 110 Stat. 3009-546,

---

[4] Four other circuits have similarly deferred to our interpretation of a "crime of child abuse." *See Alvarez-Cerriteno v. Sessions*, 899 F.3d 774, 781 (9th Cir. 2018); *Mondragon-Gonzalez*, 884 F.3d at 159; *Pierre v. U.S. Att'y Gen.*, 879 F.3d 1241, 1251 (11th Cir. 2018); *Florez v. Holder*, 779 F.3d 207, 213–14 (2d Cir. 2015). One circuit has not, regarding "non-injurious criminally negligent conduct." *Ibarra v. Holder*, 736 F.3d 903, 918 (10th Cir. 2013); *cf. Zarate-Alvarez v. Garland*, 994 F.3d 1158, 1164 (10th Cir. 2021) (per curiam) (deferring to our decision in *Matter of Mendoza Osorio* that a "crime of child abuse" includes "child-endangerment convictions for knowing or reckless conduct that does not result in injury to the child, provided the . . . statute requires, as an element of the crime, a sufficiently high risk of harm to a child").

3009-627 ("IIRIRA"). A conviction for an aggravated felony carries serious consequences, such as barring a respondent from most forms of relief from removal.[5] *See Carachuri-Rosendo v. Holder*, 560 U.S. 563, 581 (2010) (stating that "an 'aggravated felony' is relevant . . . to the type of relief [an applicant] may obtain"); *see also Esquivel-Quintana*, 137 S. Ct. at 1570 (citing *Carachuri-Rosendo* in support of the proposition that "sexual abuse of a minor encompasses only especially egregious felonies"); *Cabeda v. Att'y Gen. of United States*, 971 F.3d 165, 173 (3d Cir. 2020) ("[T]he term 'aggravated felony' itself implies a certain 'inherent seriousness[.]'" (second alteration in original) (citation omitted)).

In section 350(a) of the IIRIRA, Congress also enacted section 237(a)(2)(E)(i) of the Act, providing for removability for a "crime of child abuse."[6] This provision does not cross-reference other statutes, and Congress left the phrase "crime of child abuse" undefined, "triggering the . . . inference that Congress deliberately left [it] open to interpretation." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 508 (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)); *see also Matthews*, 927 F.3d at 616 & n.7 (distinguishing the section 237(a)(2)(E)(i) removability provision from section 101(a)(43)(A)); *Cabeda*, 971 F.3d at 168 n.1 (same).

Against this backdrop, we defined section 237(a)(2)(E)(i) of the Act "broadly," in light of Congress' intent to "single out those who have been convicted of maltreating or preying upon children." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 509; *see also, e.g.*, *Mondragon-Gonzalez*, 884 F.3d at 159 (noting "Congress' evident intent to make crimes that harm children deportable offenses"); *Florez v. Holder*, 779 F.3d 207, 211–12 (2d Cir. 2015) (concluding that our broad definition of a "crime of child abuse" is reasonable in light of the legislative history of section 237(a)(2)(E)(i)). For purposes of this provision, we concluded that Congress intended the word "child" to mean an individual under 18 based on a review of Federal and State statutes defining "child abuse" when section 237(a)(2)(E)(i) was enacted. *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512 & n.15 (noting that in 1996 the Federal child abuse laws, and the child abuse laws of 48 States and the District of Columbia, "defined the term

---

[5] A conviction for an aggravated felony renders a respondent ineligible for, among other forms of relief, asylum, cancellation of removal, and voluntary departure. *See, e.g.*, sections 208(b)(2)(A)(ii), (B)(i) of the Act, 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i) (2018) (asylum); sections 240A(a)(3), (b)(1)(C), (2)(A)(iv) of the Act, 8 U.S.C. § 1229b(a)(3), (b)(1)(C), (2)(A)(iv) (2018) (cancellation of removal); section 240B(b)(1)(C) of the Act, 8 U.S.C. § 1229c(b)(1)(C) (2018) (voluntary departure).

[6] In contrast to a conviction for an aggravated felony, a conviction for a "crime of child abuse" does not necessarily bar a respondent from applying for asylum, cancellation of removal for lawful permanent residents under section 240A(a) of the Act, and voluntary departure.

'child' to mean a person under 18 years old"). We stated that this review "provide[d] us with valuable insight into the types of conduct that Congress understood to be encompassed by the term 'crime of child abuse.'" *Id.* at 509.

We acknowledge that *Esquivel-Quintana* held that the generic definition of aggravated felony "sexual abuse of a minor" in the statutory rape context requires, absent special circumstances, that the victim be younger than 16. However, we believe that our broader generic definition of a "crime of child abuse" in section 237(a)(2)(E)(i) of the Act, which defines a "child" as an individual under 18, remains a valid interpretation of Congress' intent to make crimes that constitute the maltreatment of children, or impair a child's physical or mental well-being, removable offenses. The Court in *Esquivel-Quintana* did not state that it was creating a generic definition of statutory rape applicable to all removability provisions in the Act, and statutory rape laws are not the only avenue through which the Federal Government and the States have criminalized child abuse and related laws such as endangerment. *See Matter of Velazquez-Herrera*, 24 I&N Dec. at 509–12 (considering a variety of Federal and State child abuse laws in defining a "crime of child abuse").

Although the dissent argues that *Esquivel-Quintana* modifies the generic definition of a "crime of child abuse" for statutory rape offenses, the categorical approach methodology does not allow us to adopt different generic definitions of the same crime to fit various species of predicate offenses. *Cf. Taylor v. United States*, 495 U.S. 575, 599 (1990) (concluding that under the categorical approach, a person may be convicted of "any crime, regardless of its exact definition or label, having the basic elements" of generic burglary). *See generally Brown v. Caraway*, 719 F.3d 583, 591 (7th Cir. 2013) ("[T]he 'categorical' approach embraced by the Supreme Court in *Taylor* requires that we adopt a single, nationwide definition of [a] generic [offense] and then evaluate whether a particular state statute . . . corresponds to that definition.").

In sum, we reaffirm our holding in *Matter of Velazquez-Herrera* that for purposes of a "crime of child abuse," a "child" is a person under 18. As noted, the Fifth Circuit has deferred to this holding. *Garcia*, 969 F.3d at 134. The Supreme Court's holding in *Esquivel-Quintana* that a statutory rape offense does not qualify as "sexual abuse of a minor" based solely on the age of the participants, unless it involves a victim under 16, does not affect our definition of a "crime of child abuse" in *Matter of Velazquez-Herrera*, nor does it control whether the respondent's statutory rape offense falls within this definition.

We also agree with the DHS that the Immigration Judge erred in finding that section 39-13-506(c) of the Tennessee Code Annotated is categorically

overbroad, because it does not require proof that the accused have any particular mental state. Although the statute does not itself identify an applicable mens rea, section 39-11-301(c) of the Tennessee Code Annotated provides that, unless a Tennessee criminal statute specifies a mens rea or plainly dispenses with any mens rea requirement, the mens rea required for a conviction is "intent, knowledge or recklessness." Under Tennessee law, "[t]he legal definition of statutory rape does not expressly require a culpable mental state, yet neither does it clearly dispense with the requirement." *State v. Crawford*, No. W2011-02651-CCA-R3-CD, 2012 WL 2336734, at *4 (Tenn. Crim. App. June 19, 2012). Thus, the respondent's statute of conviction requires intentional, knowing, or reckless conduct. *See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I—Crim. 10.05(c) ("For you to find the defendant guilty of [aggravated statutory rape], the state must have proven beyond a reasonable doubt . . . that the defendant acted either intentionally, knowingly or recklessly.").

In addition to requiring a mens rea falling within the generic definition of a "crime of child abuse," section 39-13-506(c) necessarily involves conduct that constitutes "maltreatment of a child or [impairment of] a child's physical or mental well-being." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512. This is where we part ways with the dissent.

The dissent argues that the respondent's conviction is not a "crime of child abuse" under the Act because his statute of conviction does not necessarily involve "'sexual abuse' as we used that phrase in *Matter of Velazquez-Herrera*." *Matter of Aguilar-Barajas*, 28 I&N Dec. 354, 367 (BIA 2021) (Petty, concurring and dissenting). And it contends that our decision today is inconsistent with the Supreme Court's holding in *Esquivel-Quintana* because statutory rape is not "sexual abuse" based solely on the age of the participants, unless the victim is under 16. *Esquivel-Quintana*, 137 S. Ct. at 1568. We respectfully disagree, because the respondent's offense falls within the generic definition of a "crime of child abuse" consistent with *Matter of Velazquez-Herrera* and Supreme Court and circuit precedent.

Our definition of a "crime of child abuse" in *Matter of Velazquez-Herrera* reaches offenses that constitute "maltreatment of a child or [impairment of] a child's physical or mental well-being, *including* sexual abuse or exploitation." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512 (emphasis added); *see also Garcia*, 969 F.3d at 133. We have never said that this definition *only* reaches acts of "sexual abuse." The participle "including" in our definition in *Matter of Velazquez-Herrera* denotes that maltreatment or impairment of a child's well-being includes—but is not limited to—"sexual abuse." Maltreatment or impairment of a child's well-being also encompasses, "[a]t a minimum," acts involving "physical harm, even if

slight," "mental or emotional harm," or the "use or exploitation of a child as an object of sexual gratification." *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512; *see also Garcia*, 969 F.3d at 136 (stating that "sexual exploitation [of a child] necessarily involve[s] acts that impair a child's physical or mental well-being" (citing *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512)).

In *Garcia*, the Fifth Circuit concluded that "deliberate acts of sexual contact between a victim who is almost seventeen and a perpetrator who just turned twenty" necessarily involves "sexual exploitation of a child."[7] 969 F.3d at 135–36 ("Texas law recognizes that this crime is, by definition, harmful to a child." (citing Tex. Fam. Code Ann. § 261.001(1)(E) (West 2019) (defining child abuse for purposes of State mandatory-reporting law to include "sexual conduct harmful to a child's mental, emotional, or physical welfare"))). The Fourth Circuit has similarly recognized, in the Federal sentencing context, that statutory rape under Tennessee law involving a victim under 18 with a 4-year age differential necessarily relates to the "physical or nonphysical misuse or maltreatment of a person under the age of eighteen for a purpose associated with sexual gratification." *United States v. Hardin*, 998 F.3d 582, 586, 589 (4th Cir. 2021).

Thus, we conclude that the minimum criminal conduct proscribed by the respondent's statute of conviction—"sexual penetration" between a victim who is 17 years old and a perpetrator who is at least 27 years old, committed with a mens rea of recklessness—necessarily involves maltreatment or impairment of a child's physical or mental well-being and falls within the generic definition of a "crime of child abuse" under the Act. Tenn. Code Ann. §§ 39-13-506(c), 39-13-501(7); *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512; *see also Garcia*, 969 F.3d at 135–36.[8] Therefore, the offense of aggravated statutory rape under section 39-13-506(c) of the Tennessee Code

---

[7] The dissent asserts that the "conduct at issue in *Garcia* was not consensual" because the noncitizen in that case "raped and impregnated" his victim. *Matter of Aguilar-Barajas*, 28 I&N Dec. at 372 n.7 (citation omitted). However, an individual's conduct is irrelevant under the categorical approach, and the noncitizen in *Garcia* was not convicted of nonconsensual sexual activity. Although another provision of Texas law criminalizes nonconsensual sex, the statute at issue in *Garcia* criminalizes "sex *under any circumstances* with a child." *In re B.W.*, 313 S.W.3d 818, 821 (Tex. 2010) (emphasis added).

[8] Although the dissent recognizes that *Matter of Velazquez-Herrera* listed "sexual abuse" as only "*a form of child abuse*," it asserts that the "specific type of 'crime of child abuse' alleged in this case is 'sexual abuse.'" *Matter of Aguilar-Barajas*, 28 I&N Dec. at 368 (emphasis added) (citation omitted). However, it does not explain why we cannot consider whether the respondent's offense involved "mental or physical harm" or "exploitation." Nor does it challenge our conclusion that the respondent's offense involved maltreatment or impairment of a child's well-being under *Matter of Velazquez-Herrera*, 24 I&N Dec. at 512.

Annotated is categorically a "crime of child abuse" under section 237(a)(2)(E)(i) of the Act.

There is precedential support for the definitions and reasoning we have applied here as well as our conclusion. We are unaware of applicable precedent concluding that the limited holding of *Esquivel-Quintana*, articulating what constitutes "sexual abuse of a minor," controls the definition of a "crime of child abuse." The categorical approach can lead to difficult results, because it requires us to disregard the respondent's actual criminal conduct and instead hypothetically analyze the minimum conduct that has a realistic probability of being prosecuted under the statute of conviction. In determining that the respondent is removable as charged, we have, pursuant to the requirements of the categorical approach, ignored the fact that he was 28 years old at the time he committed this crime against his 14-year-old victim and have instead pretended the victim was 1 day shy of turning 18. While we are bound by the categorical approach, we are not blind to the reality of its application. Nevertheless, the categorical approach does not require us to interpret the generic definition of a "crime of child abuse" under section 237(a)(2)(E)(i) based upon the generic definition of "sexual abuse of a minor" at section 101(a)(43)(A) of the Act. Accordingly, the DHS's appeal is sustained, the Immigration Judge's decision is vacated, the respondent's removal proceedings are reinstated, and the record is remanded to the Immigration Court to provide the respondent with an opportunity to apply for relief from removal for which he may be eligible.

**ORDER:** The Department of Homeland Security's appeal is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*CONCURRING AND DISSENTING OPINION*: Aaron R. Petty, Appellate Immigration Judge

I.

The respondent was convicted in a Tennessee court of aggravated statutory rape. *See* Tenn. Code Ann. § 39-13-506(c) (2019). Based on that conviction, the Department of Homeland Security ("DHS") charged the respondent with removability as a noncitizen "convicted of . . . a crime of child abuse." Section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2018). We must apply the "categorical

approach" to determine whether the respondent's conviction renders him removable. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (citing *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 580 (2010) (noting the word "conviction" is "the relevant statutory hook" requiring application of the categorical approach)); *Matter of Moradel*, 28 I&N Dec. 310, 316–17 (BIA 2021).

I concur in the majority's conclusion that the Immigration Judge incorrectly assessed the mens rea required under section 39-13-506(c). Statutory rape is often a strict liability offense. *See Thompson v. Barr*, 922 F.3d 528, 534 (4th Cir. 2019); *see also Acevedo v. Barr*, 943 F.3d 619, 625–26 (2d Cir. 2019); *Matter of Jimenez-Cedillo*, 27 I&N Dec. 782, 787 (BIA 2020). However, as the majority explains, the Tennessee statute at issue here is an exception to the general rule. I also agree that, in view of the majority's resolution of this case, a remand is required for the respondent to be afforded an opportunity to seek relief from removal. I must respectfully dissent, however, from the majority's conclusion that the respondent is removable.

As is well-known by now, the categorical approach often requires results that may be "counterintuitive and hard-to-justify." *See Cabeda v. Att'y Gen.of the U.S.*, 971 F.3d 165, 166 (3d Cir. 2020).[1]  One such result is

---

[1]  Additional commentary on the counterintuitive—and increasingly unjust—results required by the categorical approach is not hard to come by. *See, e.g.*, *United States v. Scott*, 990 F.3d 94, 125–27 (2d Cir. 2021) (en banc) (Park, J., concurring) (noting the "absurdity" of convening an en banc court "to decide whether Mr. Scott's two convictions for first-degree manslaughter—one for shooting a man in the face and the other for stabbing a man to death—count as 'violent felonies'" and collecting similar sentiments); *United States v. Begay*, 934 F.3d 1033, 1042 (9th Cir. 2019) (N.R. Smith, J., dissenting) ("MURDER in the second-degree is NOT a crime of violence??? . . . 'I feel like I am taking crazy pills.'" (citation omitted)); *Menendez v. Whitaker*, 908 F.3d 467, 475 (9th Cir. 2018) (Callahan, J., concurring) ("The present system forces courts to parse state statutes for determinations that no state legislator ever considered, and leads to uneven results, as the immigration consequences to individuals who committed basically the same offenses turn on the fortuity of the breadth of the state statute, which in most instances has nothing to do with the individual's actual criminal conviction."); *Villanueva v. United States*, 893 F.3d 123, 139 (2d Cir. 2018) (Pooler, J., dissenting) (noting the categorical approach is a "bizarre exercise" when deciding if shooting someone is a crime of violence); *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017) (O'Scannlain, J., specially concurring) (noting "bizarre and arbitrary effects"); *United States v. Davis*, 875 F.3d 592, 595 (11th Cir. 2017) (stating that the categorical approach sends us "down the rabbit hole . . . to a realm where we must close our eyes as judges to what we know as men and women"); *United States v. Chapman*, 866 F.3d 129, 136 (3d Cir. 2017) (Jordan, J., concurring) (noting the approach requires judges to "ignore the real world"); *United States v. Faust*, 853 F.3d 39, 61 (1st Cir. 2017) (Lynch, J., concurring) (noting individual Justices have expressed skepticism to varying degrees and for varying reasons); *United States v. Doctor*,

mandated here. The respondent was convicted of aggravated statutory rape involving a minor who was 14 at the time of the encounter. He was 28. But because the "formalistic framework," *id.*, of the categorical approach requires us to examine not what the respondent actually did but what a notional defendant might hypothetically be convicted of under the same criminal statute, our analysis is limited to determining whether the State statute criminalizes more than its "generic" equivalent.[2]

The Supreme Court has held that the generic age of consent is 16. *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1572 (2017). Accordingly, absent aggravating circumstances, consensual sexual activity between an adult and a minor over 16 is not categorically "abusive." If a statutory rape statute sweeps more broadly than the generic definition (in other words, if it sets the age of consent above 16) it cannot form the predicate offense for removability under section 237(a)(2)(E)(i) of the Act for having been convicted of a crime of child abuse. There can be no categorical "child abuse" where the criminalized conduct is not categorically abusive. Here, the respondent was convicted of violating a statute that sets the age of consent at 18. Because the Supreme Court has left us no other option, I would dismiss the DHS's appeal and terminate the respondent's removal proceedings.

## II.

A respondent who has been convicted of a "crime of child abuse, child neglect, or child abandonment," is removable. Section 237(a)(2)(E)(i) of the Act. Normally, our first step would be to determine which categorical methodology to use. *See Shular v. United States*, 140 S. Ct. 779, 783 (2020). If the Federal statute refers to specific crimes without defining their elements, we must define the generic offense in order to compare the elements of the

---

842 F.3d 306, 315 (4th Cir. 2016) (Wilkinson, J., concurring) (same). The prevalence of separate opinions suggests underlying uniformity—a struggle to reconcile what should be done with what the current state of the law requires.

[2] The Supreme Court has cautioned that the categorical approach requires "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Moncrieffe*, 569 U.S. at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *see also Matter of Reyes*, 28 I&N Dec. 52, 55 n.1 (A.G. 2020). This limitation has no impact here, as Tennessee often prosecutes statutory rape offenses where the victim is 16 or 17 years old. *See, e.g.*, *State v. Powell*, No. E2019-00524-CCA-R3-CD, 2020 WL 4284047, at *1 (Tenn. Crim. App. Jul. 27, 2020); *State v. Green*, No. E2018-01287-CCA-R3-CD, 2020 WL 1921088, at *1 (Tenn. Crim. App. Apr. 21, 2020); *State v. McGrowder*, No. M2013-01184-CCA-R3-CD, 2014 WL 4723100, at *1 (Tenn. Crim. App. Sep. 23, 2014); *State v. Madison*, No. M2010-00059-CCA-R3-CD, 2012 WL 1589045, at *1 (Tenn. Crim. App. May 4, 2012).

State crime to its generic counterpart. *Id.* (citing *Taylor v. United States*, 495 U.S. 575, 598–99, 602 (1990)). If, however, the Federal statute specifies some other criterion, we simply look to whether a conviction under the State statute necessarily meets that criterion. *Id.* (citing *Kawashima v. Holder*, 565 U.S. 478, 484 (2012)). In this case, it is not immediately obvious which approach applies. "Child abuse" may refer to a class of specific criminal statutes, as many States have statutes that go by that or a similar name. *See Matter of Soram*, 25 I&N Dec. 378, 382 (BIA 2010). But "child abuse" also lacks the common-law pedigree of "unambiguously name[d] offenses" like burglary, arson, and extortion. *Shular*, 140 S. Ct. at 785. In *Matter of Velazquez-Herrera*, we adopted an approach in line with the later-developed *Kawashima* line of cases. 24 I&N Dec. 503, 512 (BIA 2008); *cf. Matter of Soram*, 25 I&N Dec. at 386 (Filppu, concurring). For purposes of section 237(a)(2)(E)(i), we have defined a "child" as anyone under 18 years of age, and we have defined "child abuse"

> broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in prostitution, pornography, or other sexually explicit conduct; as well as any act that involves the use or exploitation of a child as an object of sexual gratification or as a tool in the commission of serious crimes, such as drug trafficking.

*Matter of Velazquez-Herrera*, 24 I&N Dec. at 512.

We may safely leave the methodological question for another day, however, because both approaches yield the same result. Whether we treat "child abuse" as a specific crime requiring us to identify its generic elements, or as a separate criterion, both require abuse. Treating abuse as one of the elements under the *Taylor* methodology or as a separate criterion in the *Kawashima* methodology makes no difference. The question, then, is whether the Tennessee statute the respondent was convicted of violating criminalizes more than what is generically abusive.

As the majority explains, the respondent was convicted of violating section 39-13-506(c) of the Tennessee Code Annotated, which criminalizes "unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim."

The Tennessee statute meets the first two elements required under *Matter of Velazquez-Herrera*. First, both the Tennessee statute and our definition of a "crime of child abuse" apply to victims under the age of 18. *See Matter of Velazquez-Herrera*, 24 I&N Dec. at 512. Second, as explained by the majority, the Tennessee statute requires a mens rea of intent, knowledge or recklessness, which is more restrictive than the generic requirement of criminal negligence. *See id.* However, the third element, as relevant here, is whether a conviction under section 39-13-506(c) necessarily constitutes "sexual abuse" as we used that phrase in *Matter of Velazquez-Herrera*.[3] *See id.* (noting a "crime of child abuse" includes "sexual abuse or exploitation" and "sexual abuse, including direct acts of sexual contact"). The Supreme Court has held that consensual sexual contact between an adult and a 16- or 17-year-old is not generically abusive, as a large majority of States set the age of consent at 16. We are not at liberty to fashion a more expansive understanding of what constitutes sexual abuse.

In *Esquivel-Quintana*, the Supreme Court considered the effect of statutory rape laws in the context of whether a conviction constituted an aggravated felony as "sexual abuse of a minor" under section 101(a)(43)(A) of the Act, 8 U.S.C. § 1101(a)(43)(A) (2018). The Supreme Court agreed with the petitioner that his conduct did not constitute "abuse" because "in the context of statutory rape offenses that criminalize sexual intercourse based solely on the age of the participants, the generic federal definition of sexual abuse of a minor requires that the victim be younger than 16." *Esquivel-Quintana*, 137 S. Ct. at 1568, *rev'g Esquivel-Quintana v. Lynch*, 810 F.3d 1019, 1029 (6th Cir. 2016) (Sutton, J., concurring and dissenting in part) (noting that the age of consent is "the age at which a State no longer deems [all] sex nonconsensual (and therefore abusive)."); *see also United States v. Jaycox*, 962 F.3d 1066, 1069–70 (9th Cir. 2020). In reaching this conclusion, the Supreme Court surveyed State laws as they existed when section 101(a)(43)(A) was amended in 1996 to add "sexual abuse of a minor" as an aggravated felony and concluded that "[a]lthough the age of consent for statutory rape purposes varies by jurisdiction, . . . the 'generic' age [of consent]—in 1996 and today—is 16." *Esquivel-Quintana*, 137 S. Ct. at 1569. The Court's conclusions that the generic age of consent in 1996 was

---

[3] The majority suggests that the respondent's statute of conviction may categorically involve "mental or physical harm," "exploitation," or "maltreatment or impairment of a child's well-being." *Matter of Aguilar-Barajas*, 28 I&N Dec. 354, 362 n.8 (BIA 2021). But whether the Tennessee statute could be said to fall within a linguistic formula of our own creation is immaterial if it does not also categorically meet the statutory requirement of "abuse." *See* section 237(a)(2)(E)(i) of the Act. Crimes involving harm short of the standard of "abuse" (or "neglect" or "endangerment") are not grounds of removability under this provision.

16, and that (absent aggravating circumstances) consensual sexual activity with someone over 16 is not generically abusive, were necessary to its decision. They form part of *Esquivel-Quintana*'s holding. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (noting a court's holding includes everything necessary to its decision). We are bound by these conclusions.

While the age differential in this case is certainly troubling, I believe the Supreme Court has precluded the result reached by the majority. The specific type of "crime of child abuse" alleged in this case is "sexual abuse." *See Matter of Velazquez-Herrera*, 24 I&N Dec. at 512 (listing "sexual abuse" as a form of child abuse). Based on its review of State laws in effect in 1996, which is also the relevant timeframe for this case,[4] the Supreme Court concluded that "the 'generic' age [of consent]—in 1996 and today—is 16." *Esquivel-Quintana*, 137 S. Ct. at 1569. Because it is not criminalized in most States, the Supreme Court concluded that sexual contact between an adult and a 16- or 17-year-old is not categorically "abusive." *Id.* at 1572 ("Where sexual intercourse is abusive solely because of the ages of the participants, the victim must be younger than 16.").

The Supreme Court's analysis requires us to conclude that the respondent's conviction for aggravated statutory rape is not a crime of child abuse. The Tennessee statute criminalizes sexual contact with 16- and 17-year-olds based solely on the age of the participants. Tenn. Code Ann. § 39-13-506(c). Both "child abuse" under section 237(a)(2)(E)(i) at issue here and "sexual abuse of a minor" under section 101(a)(43)(A), which the Supreme Court considered in *Esquivel-Quintana*, require "abuse" as a predicate. Because the Tennessee statute criminalizes conduct which, under *Esquivel-Quintana*, is not generically abusive, the Tennessee statute is overbroad. *Cf. United States v. Rangel-Castaneda*, 709 F.3d 373, 377–78 (4th Cir. 2013) (holding that section 39-13-506(c) of the Tennessee Code Annotated is overbroad for a crime of violence sentencing enhancement because the generic age of consent is 16); *United States v. Lopez-DeLeon*, 513 F.3d 472, 475 (5th Cir. 2008) (holding that section 261.5(a) of the California Penal Code, which sets the age of consent at 18, is overbroad for a crime of violence because the generic age of consent is 16), *abrogated by United States v. Rodriguez*, 711 F.3d 541 (5th Cir. 2013) (en banc), *abrogated by Esquivel-Quintana*, 137 S. Ct. 1562. In short, we cannot deem

---

[4] The current section 237(a)(2)(E)(i), which includes the "child abuse" provision at issue, was enacted in 1996 at the same time as section 101(a)(43)(A), the provision the Supreme Court considered in *Esquivel-Quintana*. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, §§ 321(a)(1), 350(a), 110 Stat. 3009-546, 3009-627, 3009-640; *Esquivel-Quintana*, 137 S. Ct. at 1569; *Matter of Velazquez-Herrera*, 24 I&N Dec. at 507.

a conviction under section 39-13-506(c) to be categorically a crime of child abuse because it criminalizes conduct that the Supreme Court has held is not categorically abusive.

## III.

The majority catalogs several differences between section 101(a)(43)(A) and section 237(a)(2)(E)(i), but none of them persuade me that we can disregard the Supreme Court's holding that consensual sexual activity with minors over 16 is not generically abusive.

The majority notes that *Esquivel-Quintana* addressed the "sexual abuse of a minor" provision in section 101(a)(43)(A), where it is listed alongside murder and rape as examples of especially egregious crimes. *Matter of Aguilar-Barajas*, 28 I&N Dec. 354, 357–58 (BIA 2021). This is true, but it is immaterial to both the generic definition of statutory rape and the generic age of consent. *See Esquivel-Quintana*, 137 S. Ct. at 1569, 1572. Nothing about the Supreme Court's understanding of the generic definition of statutory rape, as it was reflected in State statutes in 1996, suggests any limitation to immigration law generally, much less to the "sexual abuse of a minor" aggravated felony provision under section 101(a)(43)(A) of the Act in particular. The Supreme Court's holding is binding here, notwithstanding that it was announced in a different context, because we are required "to adhere not only to the holdings of [the Supreme Court's] prior cases, but also to [its] explications of the governing rules of law." *Cnty. of Allegheny v. ACLU*, 492 U.S. 573, 668 (1989) (Kennedy, J., concurring and dissenting in part), *abrogated on other grounds by Town of Greece v. Galloway*, 572 U.S. 565 (2014). [5] The Supreme Court has clearly held that, absent aggravating circumstances, consensual sexual conduct between an adult and a minor over the generic age of consent is not categorically abusive. Our role is not to challenge that conclusion, but to apply it.

---

[5] Even if not a holding, the Supreme Court's comprehensive survey of State law would still clearly be "considered dicta" to which we would still "take a deferential position." *Sonnier v. Crain*, 613 F.3d 436, 464 & n.22 (5th Cir. 2010) (Dennis, J., concurring and dissenting in part) (citation omitted), *withdrawn in part on reh'g*, 634 F.3d 778 (5th Cir. 2011) (per curiam); *see also United Nurses & Allied Pros. v. NLRB*, 975 F.3d 34, 40 (1st Cir. 2020) (noting that "[F]ederal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement" and "must be accorded great weight and should be treated as authoritative when . . . badges of reliability abound" (alteration in original) (citations omitted)); *Valladolid v. Pac. Operations Offshore, LLP*, 604 F.3d 1126, 1131 (9th Cir. 2010), *aff'd and remanded*, 565 U.S. 207 (2012).

Furthermore, acknowledging that the same conduct may be abusive with respect to some minors but not others based on their relative age does not redefine "child" for a particular purpose or modify our definition of a "crime of child abuse." *Matter of Aguilar-Barajas*, 28 I&N Dec. at 360. In *Matter of Velazquez-Herrera*, we defined a "child" for purposes of "child abuse" as someone under 18. Virtually all forms of child abuse can be inflicted on a 16- or 17-year-old. But, as we have recently explained, conduct that may be abusive or neglectful with respect to younger children may not be abusive or neglectful with respect to those who are older. *See Matter of Rivera-Mendoza*, 28 I&N Dec. 184, 185, 187 (BIA 2020) (holding that a conviction under section 163.545(1) of the Oregon Revised Statutes, which prohibits negligently leaving a child under 10 unattended for such time as likely to endanger the health or welfare of the child, is a crime of child abuse or neglect under section 237(a)(2)(E)(i)); *see also Esquivel-Quintana*, 137 S. Ct. at 1572. The same principle applies with equal force here.

By relying principally on the grounds that section 101(a)(43)(A) is narrower than section 237(a)(2)(E)(i), and that "child" for purposes of section 237(a)(2)(E)(i) is a person under 18, *Matter of Aguilar-Barajas*, 28 I&N Dec. at 358–60, the majority avoids the logically antecedent question whether consensual sexual conduct between a 16- or 17-year-old and someone 18 or older meets the generic definition of "abuse" in the first place. The Supreme Court has determined that for purposes of Federal law, in the absence of aggravating circumstances, the generic age of consent is 16. The necessary corollary is that if consent can be legally given, consensual sexual activity is not inherently abusive. *See Esquivel-Quintana*, 810 F.3d at 1029. While some courts have suggested that *Esquivel-Quintana* redefined "minor" as that term is used in the phrase "sexual abuse of a minor," *see, e.g.*, *Shroff v. Sessions*, 890 F.3d 542, 545 (5th Cir. 2018), as discussed above, *Esquivel-Quintana* did not redefine anything. It held that some conduct with respect to some minors is not categorically abusive.[6]

Finally, while the majority is correct to note that *Esquivel-Quintana* is a narrow decision, as the United States Courts of Appeals for the Third and Fourth Circuits have explained, that statement is true only in the sense that *Esquivel-Quintana* addresses "the narrow context of statutory rape." *Thompson*, 922 F.3d at 534; *accord Cabeda*, 971 F.3d at 172. A recent decision of the Fifth Circuit, *Garcia v. Barr*, 969 F.3d 129, 134 (5th Cir. 2020), could be read to suggest that *Esquivel-Quintana* is narrow in the sense

---

[6]   This does not, as the majority contends, lead to "different generic definitions of the same crime to fit various species of predicate offenses." *Matter of Aguilar-Barajas*, 28 I&N Dec. at 360. It simply recognizes that some statutory rape offenses encompass conduct that the Supreme Court has held is not categorically abusive. Statutes that criminalize conduct that is not categorically abusive are not categorically "crimes of child abuse."

that it applies only to the "sexual abuse of a minor" provision of section 101(a)(43)(A). But a close reading of *Garcia* reveals that the question whether consensual sexual conduct is categorically abusive was neither raised nor decided in that case.

The petitioner in *Garcia* argued, as relevant here, that our interpretation of "crime of child abuse" was not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron*"). *Garcia*, 969 F.3d at 132. At the time, the Fifth Circuit had not yet determined whether our construction was entitled to *Chevron* deference, and the circuits were split on the question. The Fifth Circuit concluded that *Matter of Velazquez-Herrera* and *Matter of Soram* articulated a standard that was "reasonable" and "consistent with the purpose behind this ground for removal." *Id.* at 134. The petitioner suggested that, as a condition of according *Chevron* deference, "the Board should reconsider its definition of a crime of child abuse in light of *Esquivel-Quintana*." *Id.* The Fifth Circuit responded:

> *Esquivel Quintana* has no application here. The Court's narrow holding didn't relate to the child-abuse provision in [section 237](a)(2)(E)(i), mandate a particular approach to statutory interpretation, or cast doubt on the Board's definition of a crime of child abuse. *See Matthews v. Barr*, 927 F.3d 606, 614–16 (2d Cir. 2019). And because the statutory text there was unambiguous—unlike the child-abuse provision here—that case doesn't affect our *Chevron* analysis. *See Esquivel-Quintana*, 137 S. Ct. at 1572.

*Garcia*, 969 F.3d at 134. Read in context, this passage addresses only whether our existing precedent had to be revisited in light of *Esquivel-Quintana* in order to merit *Chevron* deference. I agree with *Garcia* that *Matter of Velazquez-Herrera* and *Matter of Soram* remain good law following *Esquivel-Quintana*. For the reasons outlined above, nothing in *Esquivel-Quintana* requires us to revisit our definition of "child" as someone under 18 or our substantive definition of a "crime of child abuse." The statement that "*Esquivel-Quintana* has no application here," *id.*, means only that it does not impact the *Chevron* analysis. *See Adeeko v. Garland*, No. 19-60703, 2021 WL 2709353, at *3 (5th Cir. July 1, 2021) (foreclosing any argument that the Board's definition of "child abuse" under section 237(a)(2)(E)(i) of the Act is unreasonable). With respect to whether the Texas statute of conviction was categorically a crime of child abuse, the petitioner's arguments were limited to the mens rea and level of harm required under Texas law. *Id.* at 135–36. *Garcia* did not address the question whether consensual sexual activity by an adult with a minor over the age of

consent is categorically abusive because the issue was neither raised by the petitioner nor decided by the court.[7]

IV.

The preceding discussion is, of course, an entirely abstract, hypothetical exercise. There is no 16- or 17-year-old partner. In fact, if the respondent had been convicted of the exact same conduct in any of the 34 jurisdictions that set the age of consent at 15 or 16 in 1996, *see Esquivel-Quintana*, 137 S. Ct. at 1573–76 (setting forth a list of State offenses criminalizing sexual intercourse solely based on the age of the participants), his removability would be clear. But we are bound to look only to the elements of the statute rather than the facts of the offense even "when the record makes it clear beyond any possible doubt" what the respondent actually did. *Mathis v. United States*, 136 S. Ct. 2243, 2270 (2016) (Alito, J., dissenting). Existing law requires us to disregard the fact that just a few days prior to his 29th birthday, the respondent had sex with a 14 year old.

Furthermore, we must ignore the fact that the Tennessee statute requires an age differential of a decade because the Supreme Court's rule applies "regardless of the age differential between the two participants." *Esquivel-Quintana*, 137 S. Ct. at 1572. It is not immediately obvious why the Supreme Court left open the possibility of abuse when misuse of a position of trust or authority is implicated, but it did not do the same when there is a substantial difference in age. Both appear to implicate questions of undue influence. Power differentials may inhere through relative age as well as relative positions. But that is the line the Supreme Court has drawn, and we must follow it.

As noted, the categorical approach sometimes leads to irrational results. Its original objective was to create parity in Federal treatment among disparate State statutes, *see Taylor*, 495 U.S. at 590–91, but it has instead resulted in a lack of parity in Federal treatment of identical criminal conduct. As the Fifth Circuit has explained in a factually similar case, the categorical approach

> has now metastasized into something that requires rigorous abstract reasoning to arrive at the conclusion that a 35-year-old who sexually abused a 14-year-old cannot be categorized as a tier II sex offender—notwithstanding the fact that his crime was actually "committed against a minor"—because it is theoretically possible that

---

[7] The conduct at issue in *Garcia* was not consensual. The petitioner "raped and impregnated his fourteen-year-old stepdaughter." *Garcia*, 969 F.3d at 131. He did not argue that his statute of conviction was categorically overbroad because in addition to criminalizing his own conduct, it also criminalized consensual sexual conduct with minors over the generic age of consent.

someone else could be convicted under the statute without being four years older than the victim.

*United States v. Escalante*, 933 F.3d 395, 407 (5th Cir. 2019).

That is precisely the situation we have here. The 28-year-old respondent who sexually abused a 14-year-old should not be found removable for having committed a "crime of child abuse," notwithstanding the fact that only one State set the age of consent at 14 in 1996, because it is theoretically possible that someone else could be convicted under the same statute for having sex with a minor just prior to the minor's 18th birthday.[8]

I would, regretfully, affirm the order terminating proceedings. That is, in my judgment, "what the law requires." *United States v. McCollum*, 885 F.3d 300, 309 (4th Cir. 2018) (Traxler, J., concurring).

---

[8] The counterintuitive and unsatisfactory results associated with the categorical approach are compounded in the context of statutory rape because the function of statutory rape laws—as reflected in the fact that they are usually strict liability—is not only to punish, but to protect. Under the categorical approach, States such as Tennessee that seek to protect minors by enacting an age of consent above the generic age of 16 (as it existed a quarter-century ago) will find their efforts paradoxically result in fewer—or no—Federal consequences. And this is so not just where the minor is 16 or 17; such statutes would be overbroad regardless of how young the minor might be. Further, because the generic age of consent is determined as of the date the legislation was enacted, it will not change to reflect changes in state law unless and until Congress revisits the issue or the Supreme Court modifies the required analysis. We are therefore left with the even more paradoxical possibility that if every State raised the age of consent to 17 or 18, *no* statutory rape offenses would carry Federal consequences. I have difficulty accepting that as Congress' intent. *See Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019) (noting that a definition of "burglary" that would eliminate many States' burglary statutes from serving as a predicate offense under 18 U.S.C. § 924(e) (2018) would "defy common sense" and "defeat Congress' stated objective"). Such a result would have particularly untoward consequences in light of the frequency with which statutory rape is charged when a minor under the age of consent is the victim of sexualized violence. *See, e.g.*, *Garcia*, 969 F.3d at 131; *see generally* Michelle Oberman, *Regulating Consensual Sex With Minors: Defining a Role for Statutory Rape*, 48 Buff. L. Rev. 703, 749 (2000) (concluding that only 7 percent of statutory rape prosecutions arise out of consensual, romantic relationships where the parties are close in age). Yet, unless Congress intervenes, that appears to be the direction we are headed. *See Pereida v. Wilkinson*, 141 S. Ct. 754, 762 n.2 (2021) ("Nothing requires Congress to employ the categorical approach.").